**Mark HURST, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 64A03–0710–CR–490.**

Court of Appeals of Indiana.

July 17, 2008.

Transfer Denied Sept. 18, 2008.

90

Bryan M. Truitt, Bertig & Associates, LLC, Valparaiso, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Mark Hurst appeals his conviction and sentence for Battery Resulting in Serious Bodily Injury,[1] a class C felony. He presents the following restated issues for review:

1. Did the trial court properly allow the State to amend the charging information fifteen months after the original omnibus date?

2. Did the State present sufficient evidence of serious bodily injury to support the class C felony battery conviction?

3. Did the trial court properly sentence Hurst?

We affirm.

Hurst and Rebecca Senovitz had been in a relationship and had lived together on and off for approximately five years. They had a son together, who was born on January 4, 2002. Their relationship was tumultuous, to say the least, with a history of domestic violence and restraining orders placed against both parties. In fact, less than two weeks before the instant offense Hurst had been arrested for violating a restraining order placed against him by Senovitz. Further, he was already on probation and serving weekends in jail for a similar violation committed the month before.

On the evening of July 22, 2005, Senovitz arranged for her twelve-year-old brother to babysit for her son while she went to the Junkyard Bar with a friend. Hurst had left the home earlier that day to serve his weekend jail time. He was released around 8:00 that night due to the jail being overcrowded. While Senovitz was preparing to enter the bar, Hurst unexpectedly appeared. They were eventually allowed to enter the bar together after Senovitz proved to the bouncer that the restraining order against Hurst had been lifted. After a couple hours, a disagreement arose between Hurst and Senovitz resulting in Senovitz smacking Hurst in the face. She then left and was given a ride to another bar. Hurst stayed at the Junkyard Bar until closing. Senovitz also left the other bar at closing, getting a ride home with a man whom she had met at the bar. Senovitz had the man drop her off about a block from her home. As Senovitz walked home, Hurst ran after the man's truck, said something to the man, and then punched him. The man drove off. Senovitz went into her home, apparently unaware of the altercation outside.

Soon thereafter, Hurst arrived at the home and kicked in the back door to gain entry. Hurst struck Senovitz in the back of her head, and she fell to the ground. As Hurst regained consciousness, she recalled being punched and kicked multiple times and screamed at by Hurst. She was kicked in the head, stomach, and ribs. Senovitz lost consciousness several times during the attack. Hurst ripped her clothing, including her underwear, and poured dish soap on her. Hurst called her many vulgar names and accused her of being "dirty" because he believed she had just had sex with the man that dropped her off. *Transcript* at 497. Hurst put the dish soap into Senovitz's vagina, as she screamed for him to stop and told him it burned. By Hurst's own admission at trial, he kicked Senovitz two or three times

---

**1.** Ind.Code Ann. § 35–42–2–1 (West, PREM-ISE through 2007 1st Regular Sess.).

and hit her harder than he ever had in the past.

At some point during the attack, Senovitz's brother attempted to call 911 with his cell phone, but Hurst broke the phone in half. As she pleaded for Hurst to stop, Senovitz directed her brother to take her three-year-old son into the bedroom. Senovitz's brother beat on the walls of the duplex for help, to no avail. After a couple hours, Hurst threw a blanket over Senovitz's half-naked body as she lay on the floor in the kitchen. He gave Senovitz's brother twenty dollars to not tell anyone what had happened and then left the home.[2] Senovitz attempted to go to a neighbor for help but lost consciousness on her front lawn. Her brother then went to the neighbor's house and called police.

When the police arrived, Senovitz had severe swelling and redness to her face. She was taken to the hospital by ambulance, where she reported "intolerable" pain to the sexual assault nurse. *Id.* at 208. She had multiple abrasions, contusions, and tenderness over her entire body (including her thighs, ribs, back, stomach, face, and head). While Senovitz hurt all over, her main complaints to the nurse of "severe pain" concerned the injuries to her head and ribs. *Id.* at 213. Over the course of a few hours, Senovitz was given three doses of Morphine and then a dose of Dilaudid, a "very strong, quick-acting pain medication". *Id.* at 209. She was released from the hospital that day with a prescription for Darvocet to treat her pain. Senovitz's pain lasted for days.[3]

The State charged Hurst with class B felony rape (Count I), class D felony residential entry (Count II), class A misde-

meanor domestic battery (Count III), and class A misdemeanor interference with reporting a crime (Count IV). The original omnibus date was set for and the hearing held on October 7, 2005. Thereafter, the scheduled jury trial was continued numerous times on Hurst's motion.

On January 12, 2007, the State amended the information, changing the charge in Count II to class B felony burglary and the charge in Count III to a class C felony battery. Thereafter, on January 25, 2007, the State amended the information once again. Under the amended information, Hurst was charged with class A felony rape, class B felony burglary, class C felony battery, class D felony theft, and class A misdemeanor interference with reporting a crime.

On April 12, 2007, Hurst filed a motion to dismiss the amended charges because they were not filed at least thirty days before the omnibus date. The motion was based upon our Supreme Court's recent decision in *Fajardo v. State*, 859 N.E.2d 1201 (Ind.2007). The trial court denied Hurst's motion the following day. On May 14, Hurst petitioned the court to have the issue certified for interlocutory appeal. The trial court, on May 25, denied the petition for certification for interlocutory appeal. In doing so, the court noted that effective May 8, 2007, the Indiana General Assembly amended Ind.Code Ann. § 35–34–1–5 (West, PREMISE though 2007 1st Regular Sess.), the statute that governs amendments to a charging information. Under the amended statute, the State's proposed amendments were not untimely.

Hurst's jury trial began on July 30, 2007. The jury ultimately found him

---

**2.** Hurst then fled to Illinois.

**3.** At trial, Senovitz described her pain after the attack as follows: "I hurt everywhere. There wasn't an inch of my body that didn't

hurt. My—my vagina burned so bad, and my head, I had knots on my head the size of golf balls." *Id.* at 365.

guilty of class C felony battery and class A misdemeanor interfering with reporting a crime, but acquitted him of the rape, burglary, and theft charges. On August 31, 2007, the trial court sentenced Hurst to eight years in prison for the battery conviction and a consecutive one-year term in the Porter County Jail for the misdemeanor conviction. On appeal, Hurst challenges only his conviction and sentence for battery.

1.

Once again relying upon *Fajardo,* Hurst argues that the trial court erroneously denied his motion to dismiss the amended charges that were filed after the omnibus date. Hurst acknowledges that the legislature amended I.C. § 35–34–1–5 in response to *Fajardo,* but he asserts we must apply the version of the statute in effect at the time of the instant crime. The State, on the other hand, argues that we should apply the statute in effect at the time of trial.

At the time Hurst committed the instant offenses, I.C. § 35–34–1–5(a) permitted an amendment to the charging information at any time "because of any immaterial defect," and listed nine examples. Similarly, subsection (c) permitted "at any time before, during or after the trial, ... an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Subsection (b), however, expressly limited the time for certain other amendments as follows:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:
>
>> (1) thirty (30) days if the defendant is charged with a felony; or

>> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date.

I.C. § 35–34–1–5(b).

In January 2007, our Supreme Court handed down its opinion in *Fajardo.* In that case, the court interpreted I.C. § 35–34–1–5(b) and held that when an individual is charged with a felony, amendments to matters of substance are permissible only if made more than thirty days before the omnibus date, regardless of whether the defendant's substantial rights were prejudiced. *Fajardo v. State,* 859 N.E.2d 1201. The legislature quickly responded to *Fajardo* by revising I.C. § 35–34–1–5. Subsection (b) of that statute now reads as follows:

> (b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
>
>> (1) up to:
>>
>>> (A) thirty (30) days if the defendant is charged with a felony; or
>>>
>>> (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>>
>> before the omnibus date; or
>>
>> (2) before commencement of trial;
>
> if the amendment does not prejudice the substantial rights of the defendant....

I.C. § 35–34–1–5(b). Under the revised subsection (b), the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights. The revised I.C. § 35–34–1–5 became effective on May 8, 2007.

As set forth above, the parties disagree on which version of the statute applies here—the former version of the statute as interpreted by *Fajardo* or the current version, which was enacted during the pendency of Hurst's trial. We recently addressed this precise issue in *Ramon v. State*, 888 N.E.2d 244 (Ind.App.2008). In *Ramon,* we explained:

"The ex post facto clauses prohibit Indiana from enacting a law that 'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Goldsberry v. State*, 821 N.E.2d 447, 464 (Ind. Ct.App.2005) (quoting *Spencer v. O'Connor*, 707 N.E.2d 1039, 1042 (Ind.Ct.App. 1999), *trans. denied* ). The focus of the ex post facto inquiry is not on whether the legislative change causes a disadvantage. *Id.* Instead, we must determine whether the change "increases the penalty by which a crime is punishable" or "alters the definition of criminal conduct". *Id.*

We have previously stated that the constitutional prohibitions against ex post facto criminal sanctions require that criminal proceedings be governed by the statutory provision in effect at the time of the offense. *Settle v. State*, 709 N.E.2d 34 (Ind.Ct.App.1999). This suggests that in this case we should apply the version of I.C. § 35–34–1–5 in effect prior to May 8, 2007. We, however, have noted that the ex post facto clause " 'does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.' " *Hayden v. State*, 771 N.E.2d 100, 102 (Ind.Ct.App.2002) (quoting *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)), *trans. denied.* The clause is not designed "to limit legislative control of remedies and modes of procedure which

do not affect matters of substance." *Id.* "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.*

Our task here then is to determine whether I.C. § 35–34–1–5 and the General Assembly's revisions to that statute are procedural or substantive for purposes of the ex post facto provisions of both the Indiana and United States Constitutions. We have previously noted that " '[p]rocedural, adjective or remedial law is that portion of the law which prescribes *the method of enforcing a right or obtaining a redress* for the invasion of that right. Substantive law, on the other hand, is that portion of the law which *creates, defines and regulates rights.*' " *Hayden v. State*, 771 N.E.2d at 102 (quoting *State v. Fletcher,* 149 Ariz. 187, 717 P.2d 866, 870 (1986)) (emphasis in original). "An amendment is 'procedural in nature for purposes of the ex post facto doctrine, and may be applied to crimes committed before the effective date,' if it 'neither changes the elements of the crime nor enlarges its punishment.' " *Weaver v. State*, 845 N.E.2d 1066, 1070 (Ind.Ct.App.2006) (quoting *Ritchie v. State*, 809 N.E.2d 258, 264 (Ind.2004), *cert. denied* 546 U.S. 828, 126 S.Ct. 42, 163 L.Ed.2d 76 (2005)), *trans. denied.*

Here, the revised version of I.C. § 35–34–1–5 that became effective on May 8, 2007 defines the procedures the State must follow to amend a charging information. The revised statute creates no new crimes, does not change the elements of any crime, and does not alter the sentencing statutes. Given the procedural function served by I.C. § 35–34–1–5, we conclude that the application of the revised I.C. § 35–34–1–5 in this case did not violate the ex post facto provi-

sions of either the Indiana or United States Constitutions.

*Ramon v. State*, 888 N.E.2d at 251–52.

 Hurst argues (for the first time on appeal and then only in his reply brief) that even if application of the revised statute does not violate ex post facto principles, there are not strong and compelling reasons for retroactive application. "While statutes addressing merely procedural and remedial matters may be applied retroactively, such application is not required." *Gosnell v. Indiana Soft Water Serv., Inc.*, 503 N.E.2d 879, 880 (Ind.1987). In fact, even with respect to statutes that are merely procedural or remedial, "retroactive application is the exception, and such laws are normally to be applied prospectively absent strong and compelling reasons." *Id.* We find strong and compelling reasons exist for retroactive application here.

For over twenty years prior to *Fajardo*, case law regularly permitted amendments related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were untimely under I.C. § 35-34-1-5(b). *See Fajardo v. State*, 859 N.E.2d 1201 (listing numerous Supreme Court and Court of Appeals cases). On January 16, 2007, our Supreme Court changed course and held that the statute clearly required amendments of substance to be made not less than thirty days before the omnibus date, even if a defendant's substantial rights are not prejudiced by the amendment. The legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (i.e., amendments of substance permitted anytime before trial so long as the defendant's substantial rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicates urgency in the legislature's desire to negate the effects of *Fajardo*. Though the legislature did not expressly provide for retroactive application of the amended statute, we are confident that this was the clear intent of such legislation. Therefore, the current statute applies in the instant case. *But see Fields v. State*, 888 N.E.2d 304 (Ind. App.2008) (applying *Fajardo* without expressly determining whether strong and compelling reasons existed for deviating from the general rule that statutory amendments are applied prospectively).

 While Hurst claims that the amendment of the battery charge was one of substance, he does not make an argument under the current statute that the amendment prejudiced his substantial rights. "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge". *Ramon v. State*, 888 N.E.2d at 252. Our Supreme Court has stated, "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Sides v. State*, 693 N.E.2d 1310, 1313 (Ind.1998), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201. In the instant case, the battery charge was amended more than six months before trial. There is simply no dispute that Hurst had a reasonable opportunity to prepare for and defend against this charge. Therefore, we find no error.

2.

 Hurst next argues that the State presented insufficient evidence of serious bodily injury to support his class C felony battery conviction. Citing *Davis v. State*, 813 N.E.2d 1176 (Ind.2004), Hurst claims the bruising and contusions Senovitz sustained, which caused pain for only days

with no other described limitations, should not qualify as serious bodily injury.

 Serious bodily injury is injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of the function of a bodily member or organ, or loss of a fetus. Ind.Code Ann. § 35–41–1–25 (West 2004). "[W]hether bodily injury is 'serious' has been held to be a matter of degree and therefore a question reserved for the factfinder." *Hill v. State*, 592 N.E.2d 1229, 1231 (Ind.1992). "Our commitment to the role of fact-finders tends to produce considerable deference on a matter as judgmental as whether a bodily injury was 'serious.'" *Davis v. State*, 813 N.E.2d at 1178.

When reviewing the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of witnesses. *Alkhalidi v. State*, 753 N.E.2d 625 (Ind.2001). We only consider the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Corbin v. State*, 840 N.E.2d 424 (Ind.Ct. App.2006). Moreover, we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Alkhalidi v. State*, 753 N.E.2d 625.

The evidence favorable to the verdict reveals Hurst (285 pounds) punched, hit, and kicked Senovitz (120 pounds) in the head and body approximately thirty times over a two-hour period. Hurst admitted that he hit her harder than he had ever hit her in the past. Senovitz was knocked unconscious after the first blow to the back of her head. When she regained consciousness while lying on the floor, Hurst continued to punch and kick her as she went in and out of consciousness. He also ripped her clothing and poured dish soap

into her vagina. After Hurst left the home, Senovitz attempted to go to a neighbor for help but passed out on the front lawn. She was taken by ambulance to the hospital suffering from multiple abrasions, contusions, and tenderness over her entire body (including her thighs, ribs, back, stomach, face, and head).

After receiving three doses of Morphine over the course of a few hours, Senovitz still reported "intolerable" pain to the sexual assault nurse. *Transcript* at 208. As a result, her doctor then prescribed Dilaudid, a strong, fast-acting pain medication. Senovitz hurt all over, but her main complaints of "severe pain" concerned the injuries to her head and ribs. *Id.* at 213. At trial, Senovitz described her pain after the attack as follows: "I hurt everywhere. There wasn't an inch of my body that didn't hurt. My—my vagina burned so bad, and my head, I had knots on my head the size of golf balls." *Id.* at 365. She was released from the hospital the same day with a prescription for Darvocet to control her continued pain, which lasted for days.

In *Davis*, our Supreme Court concluded the State presented insufficient evidence of serious bodily injury to support a class D felony criminal recklessness conviction. The Court acknowledged that due to the substantial deference accorded fact-finders "appellate courts have sometimes been willing to sanction convictions resting on rather slim levels of injury." *Davis v. State*, 813 N.E.2d at 1178. The Court, however, reversed Davis's conviction, explaining:

> The prosecutor contended in final argument at trial that the fractured finger was itself enough. On appeal, the State has argued that the impact on K.R.'s knee when she was pushed down and the blow that lacerated her lip and broke her finger were events from which

"extreme pain" can be inferred. *It appears that the victim said little at trial by way of describing her level of pain. We do know that the hospital did not write her up for any prescription pain medication, and we know that the officer on the scene said she was walking normally when he first saw her.*

As with all matters of degree, it is difficult to describe in words a bright line between what is "bodily injury" and what is "serious bodily injury." We conclude that even taken altogether, a lacerated lip, abrasion to the knee, and a broken pinky fall below the line.

*Id.* (record citation omitted) (emphasis supplied).

The instant case is easily distinguishable from *Davis*, a case that had slim evidence of pain, let alone extreme pain. In contrast to the victim in *Davis*, Senovitz described her pain as intolerable, severe, and very sharp. Further, she was given substantial pain medication at the hospital and was prescribed additional pain medication upon discharge. Finally, the evidence reveals Senovitz was unconscious on her front lawn prior to the arrival of the emergency responders.

Senovitz was the victim of a brutal beating, resulting in unconsciousness and multiple abrasions, contusions, and tenderness over her entire body. In light of the evidence of significant injuries and substantial evidence of the pain associated with these injuries, we conclude that the jury could have reasonably concluded that Senovitz suffered extreme pain or, in other words, serious bodily injury.

3.

Finally, Hurst challenges his maximum sentence as inappropriate. He claims his character and the nature of the battery "do not qualify him as the 'worst of the worst.'" *Appellant's Brief* at 19.

■ We have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and character of the offender. *See* Indiana Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218. Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). Thus, "we exercise with great restraint our responsibility to review and revise sentences." *Scott v. State*, 840 N.E.2d 376, 381 (Ind.Ct.App.2006), *trans. denied.* Moreover, we observe that Williams bears the burden of persuading this court that his sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867.

■ Even if we agreed with Hurst's argument that the nature of the battery was not particularly aggravating, which we do not, Hurst's character alone justifies his eight-year sentence for class C felony battery. Although only twenty-six-years old at the time of the instant crime, Hurst already had an extensive criminal history consisting of more than twenty prior convictions and spanning three states and several counties. He has at least one prior felony conviction, which was for burglary. Even more troubling, however, is the nature of his misdemeanor convictions, which is in line with his instant criminal behavior. Among his various misdemeanor convictions, he has two prior convictions for battery, one for assault, three for invasion of privacy, one telephone harassment, and two for knowingly damaging property, just to name a few. Further, Hurst was on probation in three separate cases at the time he committed the instant offense. He

also has pending charges in two separate cases for class D felony criminal confinement, class A misdemeanor domestic battery, class B misdemeanor false informing, and class A misdemeanor invasion of privacy.

In mitigation, Hurst asserts that he has completed anger management courses while incarcerated at the Porter County Jail pending trial in this case. Since being incarcerated in August 2005, however, the record reveals Hurst accumulated over 100 incident reports due to misconduct in jail. *See Appellant's Appendix* at 86 ("[h]is abhorrent behavior has generated more than 100 incident reports"). We agree with the trial court that Hurst's misconduct in jail does not support his claim that he has bettered himself while in jail.[4] Rather, it is apparent that Hurst has no intention of changing his criminal and antisocial behavior. He is a clear danger not only to Senovitz and his son, but also to the community at large. The maximum sentence imposed by the trial court is appropriate in light of Hurst's character and nothing about the nature of the offense supports a contrary conclusion.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.

4. In this regard, the trial court stated at sentencing:

You talk about and [defense counsel] talked about how you've learned something from the past two years that you've been in jail, and [defense counsel] talked about how you're going to get a GED. You've been in that jail for two years. That's more than enough time to get a GED. Instead of that, I have here 100 plus incidence [sic] reports that were received. I'm not using them as aggravating circumstances. I'm mentioning them simply to respond to [defense counsel's] allegation, if you will, that you had changed and you've made yourself better. It doesn't bear itself out.
*Sentencing Transcript* at 19–20.