Fabian GOMEZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0810–CR–496.

Court of Appeals of Indiana.

June 15, 2009.

Transfer Denied Sept. 11, 2009.

608

Paul D. Stanko, Appellate Public Defender, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Fabian Gomez was convicted after a jury trial of voluntary manslaughter [1] as a Class A felony and sentenced to forty years in the Department of Correction. He appeals, raising the following restated issues:

I. Whether the trial court properly allowed the State to amend the charging information ten months prior to trial; and

II. Whether sufficient evidence was presented to support his conviction for voluntary manslaughter.

We affirm.

---

1. *See* Ind.Code § 35–42–1–3.

## FACTS AND PROCEDURAL HISTORY

On December 28, 2006, Gomez shot his girlfriend, Jennifer Montejano, in the face during an argument inside their apartment in East Chicago, Indiana. Gomez called the police, and the responding officer found Jennifer lying on the floor of the apartment with blood on her face. The officer observed that Jennifer was still alive, but was having difficulty breathing, and that it sounded like "she was drowning in her own blood." *Jury Trial Tr.* at 224. The paramedics arrived and transported Jennifer to the hospital. She had a gunshot wound to the bridge of her nose and was in critical condition. Jennifer was admitted into the hospital and died on January 7, 2007. An autopsy was performed and revealed that the cause of death was a gunshot wound to the face.

On December 29, 2006, the State charged Gomez with aggravated battery as a Class B felony, battery as a Class C felony, and criminal recklessness as a Class C felony. On March 13, 2007, the State filed a request to amend the charging information to add a count of murder and to change the criminal recklessness count to reckless homicide as a Class C felony. On March 23, 2007, the State's amended information was stricken by the trial court. On July 3, 2007, the State filed a second request to amend the charging information in order to add a count of murder. On September 28, 2007, the trial court granted the State's request to amend the charging information and a count of murder was added. A jury trial was held on July 28–31, 2008, and at the conclusion of the trial, the jury found Gomez guilty of voluntary manslaughter as a Class A felony, aggravated battery as a Class B felony, battery as a Class C felony, and criminal recklessness as a Class C felony. The

trial court entered judgment on the Class A felony voluntary manslaughter conviction only and sentenced Gomez to a forty-year executed sentence. Gomez now appeals.

## DISCUSSION AND DECISION

### I. Amended Charging Information

██ Gomez argues that the trial court erroneously allowed the State to amend the charging information to add a count of murder. He specifically contends that the amendment of the charging information was not timely filed because, under the version of Indiana Code section 35–34–1–5 in effect at the time Gomez committed the instant offense, the State could only make a substantive amendment to the charging information thirty days prior to the omnibus date, and the State's amendment occurred several months after the omnibus date. Although Indiana Code section 35–34–1–5 was subsequently amended to allow substantive amendments to the charging information at any time prior to trial, Gomez asserts that this change to the statute was a substantive change, which cannot be retroactively applied because it implicates the prohibition on ex post facto punishments. He therefore claims that the prior version of the statute applies here, and the State's amendment of the charging information was not timely under the statute.

Here, Gomez was originally charged on December 28, 2006 with aggravated battery as a Class B felony, battery as a Class C felony, and criminal recklessness as a Class C felony. After Jennifer died on January 7, 2007, the State filed a request to amend the charging information, which was denied by the trial court as being untimely under *Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007).[2] Subsequently,

---

**2.** In *Fajardo v. State,* our Supreme Court found that the State's amendment to the

the General Assembly amended Indiana Code section 35–34–1–5, which became effective May 8, 2007. On July 3, 2007, the State again filed a request to amend the charging information to add a count of murder. This request was granted by the trial court on September 28, 2007 based upon the newly amended statute.

At the time that Gomez committed the instant offense, subsection (b) of Indiana Code section 35–34–1–5 stated:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:
>
> (1) thirty (30) days if the defendant is charged with a felony; or
>
> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date.

When the legislature subsequently revised the statute, it allowed the State to amend the charging information as to either form or substance at any time prior to trial as long as the amendment does not prejudice the substantial rights of the defendant. *See* Ind.Code § 35–34–1–5(b).

Generally, the prohibitions against ex post facto clauses prohibit Indiana from enacting a law that imposes a punishment for an act that was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Ramon v. State*, 888 N.E.2d 244, 251 (Ind.Ct.App.2008). However, these prohibitions do not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was com-

mitted. *Id.* The clause is not designed to limit legislative control of remedies and modes of procedure which do not affect matters of substance. *Id.* Although it may work to the disadvantage of a defendant, a procedural change is not ex post facto. *Id.* A statutory revision is procedural in nature for purposes of the ex post facto doctrine, and may be applied to crimes committed before the effective date, if it neither changes the elements of the crime nor enlarges its punishment. *Id.* at 252.

In *Ramon,* this court held that the application of the revised Indiana Code section 35–34–1–5 did not violate the ex post facto provisions of the Indiana and United States Constitutions because the statutory amendment was procedural. 888 N.E.2d at 252. In reaching this determination, we concluded that the revised statute defined the procedures the State must follow in order to amend a charging information and that the revision did not create any new crimes, change the elements of any crime, or alter any sentencing statutes. *Id.* In *Hurst v. State,* 890 N.E.2d 88 (Ind.Ct.App. 2008), *trans. denied,* this court found that strong and compelling reasons existed favoring retroactive application of the revised version of Indiana Code section 35–34–1–5. *Id.* at 95. We reasoned that prior to *Fajardo,* case law regularly permitted amendments to an indictment or charging information related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were timely under Indiana Code section 35–34–1–5(b). *Hurst,* 890 N.E.2d at 95. Further, within a few months after our Supreme Court decided *Fajardo,* the legislature quickly amended the statute to reflect the law before *Fajardo,* and this court

charging information constituted an amendment in matters of substance and, therefore, was required to be done thirty days before the

omnibus date under the prior version of Indiana Code section 35–34–1–5. 859 N.E.2d 1201, 1208 (Ind.2007).

concluded that this prompt return to *pre-Fajardo* law indicated an urgency to negate the effects of that case. *Id.* Based upon this, we concluded that it was the clear intent of the legislature to have the amended statute apply retroactively. *Id.*

Therefore, based on the holdings of both *Hurst* and *Ramon,* this court has found that the legislative revisions to Indiana Code section 35–34–1–5 were procedural and did not implicate the ex post facto provisions of the Indiana and United States Constitutions. The amended version of the statute may accordingly be applied retroactively, and was applicable in the present case, allowing the State to amend its charging information to add the count of murder approximately ten months before the trial.

 Additionally, the amended information did not prejudice Gomez's substantial rights. "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Ramon,* 888 N.E.2d at 252 (citing *Jones v. State,* 863 N.E.2d 333, 338 (Ind.Ct.App.2007)). " 'Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.' " *Id.* (quoting *Sides v. State,* 693 N.E.2d 1310, 1313 (Ind.1998), *abrogated on other grounds by Fajardo,* 859 N.E.2d at 1206). Here, the time period between the amendment of the charging information and the jury trial was approximately ten months and gave Gomez the opportunity to prepare for the murder charge. Gomez cannot show that he was prejudiced by the added charge as he had ample notice of the new charge and a significant amount of time to prepare a defense for the trial. The trial court did not err when it granted the State's request to amend its charging information.

## II. Sufficient Evidence

 Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Williams v. State,* 873 N.E.2d 144, 147 (Ind.Ct.App.2007). We will consider only the evidence most favorable to the judgment together with the reasonable inferences to be drawn therefrom. *Id.; Robinson v. State,* 835 N.E.2d 518, 523 (Ind.Ct.App.2005). We will affirm the conviction if sufficient probative evidence exists from which the fact finder could find the defendant guilty beyond a reasonable doubt. *Williams,* 873 N.E.2d at 147; *Robinson,* 835 N.E.2d at 523.

Gomez argues that the State failed to present sufficient evidence to support his conviction for voluntary manslaughter. He specifically contends that the testimony of the forensic pathologist only established that the bullet fired from Gomez's gun paralyzed Jennifer, not that it caused her death. He therefore claims that the evidence only showed that he paralyzed her and was insufficient to prove that he actually killed her.

 In order to convict Gomez of voluntary manslaughter, the State was required to prove that he knowingly or intentionally killed another human being while acting under sudden heat. Ind.Code § 35–42–1–3(a). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder … to voluntary manslaughter." I.C. § 35–42–1–3(b). It is not necessary for the State to prove that the defendant's acts were the sole cause of the decedent's death. *Watson v. State,* 658 N.E.2d 579, 580 (Ind. 1995). The State merely needs to introduce sufficient evidence from which a rea-

sonable jury could conclude beyond a reasonable doubt that the defendant's acts contributed, whether mediately or immediately, to the victim's death. *Id.* (citing *Bivins v. State,* 254 Ind. 184, 188–89, 258 N.E.2d 644, 646 (1970) (holding that defendant is responsible for decedent's death if the injury which he inflicted contributed to death, even if other causes also contributed)).

In the present case, the evidence presented showed that Gomez shot Jennifer in the face and that this gunshot was the cause of her death. Gomez testified that he shot Jennifer in the face during an argument. *Jury Trial Tr.* at 620. The forensic pathologist, Dr. Cavanaugh, testified that the cause of Jennifer's death was the gunshot wound to the face. *Id.* at 431. Although Dr. Cavanaugh further testified that the "mechanism of death" was pneumonia, he continued to state that the pneumonia was "caused by the gunshot wound, which led to the complete paralysis." *Id.* at 432. The above testimony established that Gomez's act of shooting Jennifer in the face was the cause of her death. Sufficient evidence was presented to support Gomez's conviction for voluntary manslaughter.

Affirmed.

RILEY, J., and MATHIAS, J., concur.