**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana



**FILED**
Apr 30 2013, 9:24 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHAWN E. VOORHIES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A05-1208-CR-408 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1108-FA-12

**April 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following his plea of guilty to Class A felony burglary resulting in serious bodily injury,[1] Shawn E. Voorhies ("Voorhies") appeals the fifty-year sentence imposed by the trial court. He raises the following two restated issues:

I. Whether the trial court considered two improper aggravating circumstances and thereby abused its discretion, and

II. Whether the sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 11, 2011, Voorhies broke into and entered the residence of Jerry Partin ("Partin") with the intent to steal items from the home. Partin came home from work to have lunch and found an unknown pick-up truck parked in his driveway with a number of his belongings visible in the bed of the truck. Partin encountered Voorhies, whom he did not know, inside the home and attempted to talk him out of the crime, but Voorhies continued to remove items from the home. When Partin began to use his phone to call 9-1-1 for help, Voorhies smacked the phone out of his hand, punched Partin in the face, knocked him unconscious, and "continued to beat [his] head in." *Tr*. at 42.

At some point, Voorhies left the premises, and Partin's uncle, who lived next door, heard noises and came over to Partin's home to find Partin bloodied and injured. Partin underwent an emergency surgery for injuries to his nose. After the swelling reduced, Partin had an additional surgery to reconstruct his nose and face.

---

[1] *See* Ind. Code § 35-43-2-1.

2

In August 2011, the State charged Voorhies, by amended information, with: (1) Class A felony burglary resulting in serious bodily injury; (2) Class C felony battery resulting in serious bodily injury; (3) Class D felony theft; (4) Class B felony burglary; (5) Class B felony criminal confinement. The State also charged Voorhies with being an habitual offender. Under the terms of a plea agreement, Voorhies pleaded guilty to the burglary resulting in serious bodily injury charge, and in exchange for his plea, the State dismissed all of the remaining counts.

At the sentencing hearing, the trial court advised Voorhies of his rights and expressly reminded him that it was an "open sentence," and he could be sentenced to a term from twenty to fifty years at the Department of Correction. *Id*. at 35-36. Partin testified that he encountered Voorhies when he came home for lunch, that he attempted to talk Voorhies out of doing what he was doing, that when he tried to use his phone and call for emergency help, Voorhies knocked the phone out of his hand and hit or choked him. Partin lost consciousness, but Voorhies continued to hit him with something causing injuries. Partin had to have emergency surgery to his nose and face, and when the swelling went down, he required additional surgery. Now, Partin has scarring to his face from deep sutures, must be careful to avoid the sun, and has trouble breathing with when he has a common cold. He also is supposed to wear a sleep breathing machine, but because of how his face has healed, the apparatus is unstable and makes it difficult to sleep. Partin may require additional surgery to cosmetically improve the scarring. He testified that the incident greatly affected him and his family, who continue to fear for their security. They removed a tree line, got a home alarm

3

system, installed a fence, and a German shepherd dog. Partin testified that the incident even affected not only him, but his neighbors as well in terms of contentment and security.

Voorhies read a statement to the trial court accepting responsibility and expressing remorse, and he apologized to Partin and Partin's family for the pain he caused by his actions. Voorhies conceded, "I am a drug addict," and he expressed his desire for substance abuse treatment. *Tr.* at 58. In addition, Voorhies testified that he suffers from a variety of physical health issues, such as degenerative disc disease, Crohn's Disease, fibromyalgia, anxiety, and depression that contributed to his substance abuse problems. On the day of the incident, Voorhies was under the influence of the drugs dilaudid and klonopin, and he had no memory of the events that occurred at Partin's home.

The trial court identified the following aggravating circumstances: (1) Voorhies's criminal history, including three misdemeanor and four felony convictions; (2) Voorhies violated parole at the time he committed the current offense; (3) the significant emotional hardship to the victim and the victim's family; (4) the injury to the victim was above and beyond what was necessary to constitute serious bodily injury; and (5) Voorhies is likely to reoffend. It identified the following mitigating circumstances: (1) Voorhies pleaded guilty and accepted responsibility for his actions; (2) he showed remorse; (3) he has a history of mental health issues; and (4) he was under the influence when he committed the offense. Finding that the aggravators "substantially outweigh" the mitigators, the trial court sentenced Voorhies to the maximum fifty years of incarceration. *Id.* at 84; see *also Appellant's App.* at 52. Voorhies now appeals.

4

## DISCUSSION AND DECISION

## I.    Abuse of Discretion

Voorhies argues that the trial court abused its discretion when it sentenced him by "citing two improper aggravating circumstances to justify the maximum fifty-year sentence." *Appellant's Br.* at 4.  Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion, which occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court.  *Webb v. State,* 941 N.E.2d 1082, 1088 (Ind. Ct. App. 2011), *trans. denied.*

> A trial court must enter a sentencing statement that includes reasonably detailed reasons for imposing a particular sentence.  The purpose of this rule is to guard against arbitrary sentencing and to provide an adequate basis for appellate review.  A trial court may abuse its discretion by issuing an inadequate sentencing statement, finding aggravating or mitigating factors that are not supported by the record, omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law.

*Id*. (citations omitted).  The relative weight given to aggravating and mitigating circumstances is not subject to review for an abuse of discretion.  *Id*.

Initially, we observe that Voorhies does not challenge two of the four aggravating circumstances cited by the trial court in the sentencing statement to justify its sentence, namely that he had a criminal history and that he was on parole at the time he committed the offense; he acknowledges that it was proper for the trial court to consider those two circumstances. *Appellant's Br*. at 7.  Rather, Voorhies claims that the trial court abused its discretion by using the following as aggravating factors:  the seriousness of the crime and Partin's injuries, as well as the impact on the victim's family.  We examine each in turn.

5

Voorhies takes issue with the trial court's finding as an aggravator that "[t]he victim's injuries were above and beyond those [that] the State had to prove in this case for purposes of 'serious bodily injury.'" *Appellant's App*. at 51. Voorhies asserts that a factor constituting a material element of an offense cannot be used as an aggravating circumstance, and he is correct in that regard. *Hall v. State*, 870 N.E.2d 449, 464 (Ind. Ct. App. 2007). However, "even when serious bodily injury is an element of the crime charged, the severity of the injury may serve as a valid aggravating circumstance." *Patterson v. State*, 846 N.E.2d 723, 731 (Ind. Ct. App. 2006); *see also* Ind. Code § 35-38-1-7.1(a)(1) (providing non-exhaustive list of aggravators that may be considered when imposing sentence, including that harm, injury, loss, or damage suffered by victim of offense was: (A) significant; and (B) greater than elements necessary to prove commission of offense).

Turning to the elements of the instant offense, Indiana Code section 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." The offense is a Class A felony if it results in either bodily injury or serious bodily injury "to any person other than a defendant." *Id.* Serious bodily injury is injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus. Ind. Code § 35-31.5-2-292; *Hurst v. State*, 890 N.E.2d 88, 96 (Ind. Ct. App. 2008), *trans. denied*. Whether bodily injury is serious has been held to be a matter of degree and therefore a question reserved for the fact finder. *Hurst*, 890 N.E.2d at 96. Our

6

commitment to the role of fact finders produces considerable deference on a matter as judgmental as whether a bodily injury was serious. *Id*.

Here, the trial court in its sentencing statement found, "Partin was rendered unconscious, suffered permanent disfigurement, could no longer wear his sleep apnea machine due to the injury to his nose, would incur future surgeries, treatment and doctor appointments and suffered significant emotional trauma." *Tr*. at 51-52. Voorhies argues that the record did not support a finding that the victim's injuries were "above and beyond" those that the State had to prove for purposes of serious bodily injury, and the trial court erred in holding otherwise. We disagree. Here, the record before us indicates that Voorhies, while burglarizing Partin's home, encountered Partin and knocked Partin unconscious. Voorhies at that point could have left the premises, either with or without the stolen items, but according to Partin, Voorhies continued, by some means, to injure Partin, whether by kicking or punching him or using a weapon, which resulted in major injuries to Partin's face. Partin required emergency surgery to make initial repairs to his face, and then he underwent subsequent surgery "to have [his] whole … face rebuilt." *Id*. at 42. Partin was the victim of a brutal beating, resulting in unconsciousness, lacerations, contusions, and broken bones. Voorhies has failed to establish that the trial court abused its discretion when it considered the severity of Partin's injuries as an aggravator.

Voorhies also asserts that it was improper for the trial court to consider the trauma suffered by Partin's family as an aggravating circumstance. In its sentencing order, the trial court identified as one of four aggravating factors that "[t]he victim's family suffered severe

7

emotional trauma. The family has purchased a guard dog, cut down trees, erected a fence, and installed home security equipment." *Appellant's App*. at 52. Voorhies argues that it was improper for the trial court to consider the impact on the family as an aggravating circumstance because the loss that accompanies a person's injury or death and its impact on family and friends is already factored into the statutory advisory sentence scheme. It is correct that "under normal circumstances the impact upon family is not an aggravating circumstance for purposes of sentencing." *Bacher v. State,* 686 N.E.2d 791, 801 (Ind. 1997); *see also Sipple v. State*, 788 N.E.2d 473, 480 (Ind. Ct. App. 2003), *trans. denied.* However, the impact on others may qualify as an aggravator in certain cases but, in order to qualify as such, the defendant's actions must have had an impact on other persons of a destructive nature that is not normally associated with the commission of the offense in question and this impact must be foreseeable to the defendant. *Sipple*, 788 N.E.2d at 480-81.

In this case, Partin presented testimony at the sentencing hearing that, as a result of this incident, his two minor sons "literally were afraid to be in their own home, their own yard." *Tr*. at 48. To make the home more secure, they cut down a tree line around the front yard so that neighbors could see the house, purchased a "policy quality German shepherd" dog to protect the house, erected a fence, and installed motion detectors all the way around his house. *Id*. at 48-49. Partin explained he had been active in his sons' lives and that the injuries inflicted by Voorhies had impacted all their lives, testifying, by way of example, that he had planned to coach their baseball team(s) that autumn, but he could not be in the sun, could not throw a ball, and the like. Further, Partin stated that the incident with Voorhies

8

"changed my whole neighborhood," with neighbors being "on top alert" both after it happened and currently, and that "nobody is the same because of this." *Id*. at 53.

Voorhies concedes that there is "[n]o doubt that the Partin family was traumatized by the incident." *Appellant's Reply Br*. at 4. He argues, however, that the impact was encompassed within the expected impact on family members of a victim of violence, and that the impact was not so distinct so as to rise to the level of a separate aggravating circumstance. Voorhies's argument is not without merit; however, we conclude that it presents questions of shades of judgment that are best left to trial court discretion, and we cannot say that the trial court abused its discretion when it determined that the impact upon Partin's family was of such a destructive degree and type that it constituted an aggravating circumstance.

Regardless, even if we were to find that consideration of the impact upon Partin's family was improper, the trial court identified several other valid aggravating factors, including Voorhies's criminal history that consisted of four prior felony convictions and three misdemeanors and the fact that he was on parole at the time he committed the Partin burglary. We discern no abuse of discretion in the sentence that the trial court imposed.

## II.    Appropriateness of Sentence

Next, Voorhies argues that his fifty-year sentence is inappropriate. Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State,* 848

N.E.2d 1073, 1079-80 (Ind. 2006). Although this court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State,* 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008). The question under Indiana Appellate Rule 7(B) analysis is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant bears the burden of persuading this court that the sentence is inappropriate. *Childress,* 848 N.E.2d at 1080.

Burglary resulting in serious bodily injury is a Class A felony. Ind. Code § 35-43-2-1(2). The advisory sentence for a Class A felony is thirty years, with a maximum sentence of fifty years and a minimum sentence of twenty years. Ind. Code § 35-50-2-4. Voorhies claims that his fifty-year sentence was not appropriate in light of the nature of the offense and his character.

As for the nature of the offense, Partin returned to his home for lunch and found Voorhies, whom he did not know, removing items from the house. Partin "tried to talk him out of what he was doing," but Voorhies continued. *Tr*. at 41. When Partin attempted to use his cell phone in the driveway to call 9-1-1, Voorhies knocked it away. Voorhies struck

10

Partin and rendered him unconscious. Partin explained, "[H]e had knocked me unconscious, [and] continued to beat my head in after I was unconscious with, I'm not sure how it happened . . . I'm not sure what he hit me with if it was his foot or weapon, I'm not sure." *Id*. at 42. Partin required emergency surgery to stabilize the injuries and later had to have his nose completely rebuilt. Voorhies could have left when he encountered Partin, or he could have left when he knocked Partin unconscious; he did neither. These facts demonstrate a callous disregard for another person's life and property, even a level of superfluous brutality.

As for Voorhies's character, he was on parole for three felony thefts at the time of the burglary and attack on Partin. He did not have steady employment at that time, but had arranged to work a landscaping job for a friend. On the day of the burglary, Voorhies was not scheduled to go into work, so he got up "shot some dilaudid, snorted some klonopin." *Id*. at 60. He then received a call to come into work, but he "did some more klonopin, shot some more dilaudid and took off." *Id*. After that, he remembers nothing until he found himself in jail.

Voorhies's criminal history reflects that he had accumulated three misdemeanor convictions and four felony convictions prior to this offense. As the State recognized in its argument at sentencing, Voorhies had been charged with burglary on nine prior occasions, but he had always pleaded guilty to something else, such as theft. *Id*. at 68. A record of arrest, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State. *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). Such information may be relevant to the trial court's assessment of the

11

defendant's character in terms of the risk that he will commit another crime. *Id.* Voorhies explained that the majority of the offenses in his criminal record were precipitated by his need to obtain money to buy drugs. Prior to this incident with Partin, Voorhies had "never hurt anybody before." *Tr.* at 61.

We find that Voorhies's criminal history demonstrates an escalating pattern of taking other people's property to support his drug addiction, and the incident against Partin illustrated the introduction of violence into the pattern. We acknowledge that Voorhies pleaded guilty, accepted responsibility, and expressed remorse to Partin, his family, and the trial court. Voorhies explained that he was not otherwise a violent type of person; rather, it was his addiction to drugs that fueled his burglaries and, eventually, violence. The trial court noted that, while it was not completely unsympathetic to Voorhies's addiction issues, that mitigator was not extended significant weight because Voorhies had failed to pursue or take advantage of drug rehabilitation or mental health opportunities. In sum, Voorhies has failed to persuade us that his fifty-year sentence for Class A burglary resulting in serious bodily injury is inappropriate.

Affirmed.

ROBB, C.J., and PYLE, J., concur.