**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Aug 28 2013, 5:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| OSCAR EDUARDO PEREZ, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1212-PC-532 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0602-MR-2

**August 28, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Oscar Eduardo Perez (Perez), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUE

Perez raises two issues on appeal, which we consolidate and restate as the following single issue:  Whether Perez received ineffective assistance of counsel.

## FACTS AND PROCEDURAL HISTORY

We adopt this court's statement of facts as set forth in our opinion issued in Perez' direct appeal, *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*:

> On February 18, 2006, Perez and others affiliated with a gang known as the Nortenos went to an under twenty-one-year old night club in Goshen, Indiana.  At the club, the Nortenos got into a confrontation with a rival gang, the Surenos.  Police officers came to disperse the group.  Perez left the club and headed north on U.S. 33, riding in a red Acura with his brother driving.  A group of the Nortenos traveled along with the Acura, riding separately in a grey Durango.
>
> While driving on U.S. 33, the Nortenos encountered a group of Surenos riding in a tan Malibu.  The Nortenos in the Durango and the Surenos flashed gang signals at each other and at some point a passenger in the Durango fired a paintball gun several times at the Malibu.  The Malibu swerved, came up behind the Durango, and rammed it from behind.  Perez riding in the Acura just behind and to the side of the Malibu, grabbed his SKS assault rifle and fired three to five shots out of the window at the Malibu.  The Malibu then drifted off the road.
>
> The Nortenos drove on to a residence where Perez dismantled the gun, hid part of it, and left with the remaining parts.  Later, Perez returned and bragged that he fired at the Malibu and was certain he had hit it.

2

Fourteen-year-old Rogelio Reyes, who was riding in the tan Malibu, was hit in the eye by one of the shots. The bullet then passed through the left side of his brain, causing his death. Saul Rodriguez, who was driving the Malibu, was also hit by one of the bullets, and was seriously wounded.

On February 3, 2006, the State filed an Information charging Perez with Count I, murder, a felony, Ind. Code § 35-42-1-1 and Count II, criminal gang activity, a Class D felony, I.C. § 35-45-9-3. On August 25, 2006, the State moved to amend the charging Information by adding Count III, attempted murder, a Class A felony, I.C. §§ 35-41-5-1; -42-1-1. During a hearing on August 31, 2006, Perez objected to the State's motion to amend but declined to seek a continuance of the trial. The trial court granted the State's motion to amend.

On September 18 through September 21, 2006 a jury trial was conducted. At the close of the evidence, the jury found Perez guilty as charged. On October 26, 2006, during the sentencing hearing, the trial court sentenced Perez to fifty-five years on the murder conviction, one and one-half years on criminal gang activity, to run concurrent with the murder sentence, and thirty years on attempted murder, to run consecutive to the murder sentence. Thus, Perez was sentenced to a total of eighty-five years. Perez appealed his conviction, raising two issues: (1) jury instructions and (2) the sufficiency of the evidence on his attempted murder conviction. On August 24, 2007, we affirmed the trial court. *See Perez*, 872 N.E.2d at 214.

On March 10, 2012, Perez filed a petition for post-conviction relief. The post-conviction court conducted a hearing on his petition on, respectively, November 3, 2011

3

and June 28, 2012. On November 21, 2012, the post-conviction court issued its findings of fact and conclusions of law, denying Perez' petition.

Perez now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

### II. *Ineffective Assistance of Counsel*

Perez contends that he was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005),

4

*trans. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*). The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake*, *v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied, cert. denied*, 537 U.S. 839 (2002) (quoting *Strickland*, 466 U.S. at 697).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

A. *Trial Counsel*

Perez argues that he received ineffective assistance of trial counsel. Specifically, he urges us to find that his trial counsel was ineffective for failing to present a self defense or defense of others at trial. The record reflects that trial counsel advanced a trial

5

theory of criminal recklessness and reckless homicide in the hope that the jury would convict Perez of the lesser included charge of recklessness rather than murder.

After hearing testimony of trial counsel, the post-conviction court found, in pertinent part, that:

> 12. [Trial counsel] testified that he reviewed all the State's discovery and discussed the evidence with [Perez]. [Trial counsel] also testified that he considered all defenses, and in his professional opinion, the evidence did not support arguing defense of others because [Perez] placed a long rifle outside a window and fired. [Trial counsel's] decision to advance a theory of recklessness over self defense/defense of others was, in his own words, a "strategic decision." Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation investigation. In this case, [trial counsel] conducted a full investigation, and thus is afforded the highest level of deference. [Trial counsel] is an experienced attorney, having practiced criminal law since 1978 as both defense and prosecutor. This court declines to second guess that [trial counsel's] decision regarding defenses. Therefore, the court finds that [Perez] has failed to meet his burden of proving ineffective assistance of trial counsel.

(Appellant's App. pp. 34-35) (internal citation omitted).

First, we observe that the choice of defense theory is a matter of trial strategy. *Overstreet v. State*, 877 N.E.2d 144, 154 (Ind. 1990). Trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998). This is the case even when such choices may be subject to criticism or the choice ultimately proves detrimental to the defendant. *Id.* Here, the choice of a criminal recklessness or reckless homicide defense did not fall outside the boundaries of reasonableness. Indiana Code section 35-42-1-5

6

provides that "[a] person who recklessly kills another human being commits reckless homicide, a Class C felony." Reckless is defined as engaging "in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35-41-2-2. In this regard, it is not unreasonable to argue that firing an assault rifle out of a speeding car at another speeding car resulting in the death of one of the passengers, fits this reckless behavior.

Moreover, even if trial counsel would have advanced a defense of others strategy, that was doomed to fail. Defense of self or others as an affirmative defense is established by statute. "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of lawful force." I.C. § 35-41-3-2(a). However, "firing multiple shots [at a victim] undercuts a claim of self-defense." *Randolph v. State*, 755 N.E.2d 572, 576 (Ind. 2001). Therefore, based on the evidence before us, we cannot say that trial counsel's performance amounted to ineffective assistance of counsel.

### B. *Appellate Counsel*

Next, Perez contends that his appellate counsel rendered ineffective assistance. Specifically, he argues that appellate counsel failed to allege in his appellate brief that the trial court erred when it permitted the State to amend the charging information in violation of the directives proponed in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007).

The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness. *Wright*

*v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. In *Bieghler*, our supreme court identified three categories of appellate counsel ineffectiveness claims, including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95, *reh'g denied, cert. denied*, 525 U.S. 1021 (1998). In evaluating these claims, we use the following two part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Id*. at 194. Otherwise stated, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonably strategy. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164 (2002).

Perez was originally charged on February 23, 2006 with murder and criminal gang activity. Less than one month before trial, the State moved to amend the Information by adding Count III, attempted murder. Over Perez' objection, the trial court granted the State's motion and the State filed the amended Information on September 5, 2006, with trial commencing September 18, 2006, resulting in the jury finding Perez guilty as charged. Perez appealed his conviction and filed his appellate brief on March 7, 2007; we issued our opinion on August 24, 2007.

After the filing of Perez' appellate brief but prior to our opinion, the supreme court issued its decision in *Fajardo*, 859 N.E. 2d at 1207 holding that:

Subsection 5(b) [of I.C. § 35-3.1-1-5] presently prohibits any amendment as to matters of substance unless made thirty days before the omnibus date for felonies and fifteen days before the omnibus date for misdemeanors. The statutory prerequisite requiring that an amendment not prejudice the substantial rights of the defendant applies only to amendments of certain immaterial defects under subsection 5(a)(9) and to amendments related to a defect, imperfection, or omission in form as provided in subsection 5(c). But as to an amendment relating to matters of substance, the statute is clear: the only prerequisite is that it must be filed the specified number of days before the omnibus date, pursuant to subsection 5(b).

Perez now maintains that because the State's requested amendment to the charging Information was one of substance and was filed untimely pursuant to *Fajardo*, Perez' appellate counsel should have raised this issue in his appellate brief. Although *Fajardo* was issued after the appellate brief was filed, Perez asserts that appellate counsel should have "filed additional authorities or otherwise amended the Brief once the new decision came down[.]" (Appellant's Br. p. 19).

Notwithstanding *Fajardo*'s holding, we do not need to decide whether the State's amendment amounted to one of substance or form. In *Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008), *trans. denied*, we stated:

For over twenty years prior to *Fajardo*, case law regularly permitted amendments related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were untimely under I.C. § 35-34-1-5(b). On January 16, 2007, our [s]upreme [c]ourt changed course and held that the statute clearly required amendments of substance to the made not less than thirty days before the omnibus date, even if a defendant's substantial rights are not prejudiced by the amendment. The legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (*i.e.*, amendments of substance permitted anytime before trial so long as the defendant's substantial rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicates urgency in the legislature's desire to negate the effects of *Fajardo*. Though the legislature did not expressly

9

provide for retroactive application of the amended statute, we are confident that this was the clear intent of such legislation. Therefore, the current statute applied in the instant case.

Likewise here, because the legislative amendment was effective on May 8, 2007 and we issued our appellate opinion in Perez on August 24, 2007, the amended statute, returning to a pre-*Fajardo status quo*, would have applied even if appellate counsel had raised the issue.

At the time appellate counsel filed his appellate brief, the *Fajardo* issue was not obvious from the face of the record. *See Bieghler*, 690 N.E.2d at 194. Moreover, in light of the short life of the *Fajardo* decision and the rapid reaction by the legislature which superseded *Fajardo* prior to issuing our appellate decision, we cannot conclude that Perez' appellate attorney was ineffective for failing to raise the issue on appeal.

## CONCLUSION

Based on the foregoing, we conclude that Perez received effective assistance of counsel.

Affirmed.

KIRSCH, J. and C J. ROBB concur

10