

FILED
Mar 15 2019, 9:31 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William E. Mays,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | March 15, 2019<br><br>Court of Appeals Case No.<br>18A-PC-2071<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>The Honorable Jeffrey L. Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-1504-PC-14242 |

**Najam, Judge.**

Statement of the Case

William Mays[1] appeals from the post-conviction court's denial of his petition for post-conviction relief. Mays presents a single issue for our review, namely, whether the post-conviction court erred when it concluded that Mays did not receive ineffective assistance of appellate counsel in his direct appeal. We hold that Mays' appellate counsel performed deficiently when she did not include in the record on appeal a pretrial transcript relevant to the issues raised on appeal. However, we also hold that Mays cannot establish that the result of his direct appeal would have been different but for his appellate counsel's deficient performance. Accordingly, we affirm the post-conviction court's denial of Mays' petition.

## Facts and Procedural History

The facts underlying Mays' convictions for attempted murder, a Class A felony, and unlawful possession of a firearm by a serious violent felon, a Class B felony, were stated by this Court in his direct appeal:

> Shortly before midnight on October 14, 2005, Stanley Flowers, Jr. ("Flowers") drove his blue Chevrolet Avalanche truck to the Shadeland Court Apartments to meet Bobby Thompkins ("Thompkins"), nicknamed "Forty," who was driving a burgundy Dodge Stratus and had Mays and another individual nicknamed "Cuz" in his car. Tr. p. 55-56. Mays, Thompkins, and Cuz got into Flowers' truck, and Flowers drove to a liquor

---

[1] The record on appeal contains various spellings for Mays' name, but his post-conviction attorney represents that "Mays" is "[t]he correct spelling." Appellant's Br. at 7 n.1. Thus, that is the spelling we use.

store, where they purchased a pint of liquor and began drinking it in the truck. Flowers then drove Mays, Thompkins, and Cuz to a downtown Indianapolis nightclub called "The Government." *Id.* at 57. The four men drank some more liquor in the truck before entering the nightclub around 1:30 a.m.

When the four men left the nightclub around closing time at 3:00 a.m., they heard gunshots in the alley behind the nightclub, and then Mays pulled out a little chrome gun. No more gunshots were fired, and Flowers drove the group back to the Shadeland Court Apartments with Mays sitting in the front passenger seat, Cuz sitting in the rear passenger seat, and Thompkins sitting in the rear driver's side seat. Flowers parked his truck in the apartment's parking lot, and the four men sat in the truck talking and drinking. Mays, Thompkins, and Cuz also snorted cocaine.

As they were sitting in the truck, Mays and Flowers began to argue, and Mays told Flowers that he was going to "take [Flowers'] truck and take [his] stuff[.]" *Id.* at 62. When Flowers told Mays that Mays was not going to take his truck, Mays pulled out his pistol and shot Flowers in the right upper arm. Flowers jumped out of his truck, and Mays shot Flowers again in the arm. Flowers ran to a fence that was fifteen to twenty feet away from his truck, and, as Flowers attempted to climb over the fence, Mays shot Flowers in the back. Flowers got to the other side of the fence, heard more shots being fired, and lay on the ground pretending to be dead until he no longer heard any more gunshots. Flowers then crawled along the fence line until he encountered some construction workers working on a bridge. One of the workers called police, and once the police arrived, Flowers told one of the officers that "Will" shot him. *Id.* at 68, 132. Flowers was then taken to the hospital for treatment.

Leander Scott ("Scott"), who lived in the Shadeland Court Apartments, returned home to the apartments around 3:40 a.m. and noticed a maroon Stratus that looked like Thompkins' car,

with two or three guys inside, drive out of the apartment's parking lot. After Scott parked his car, he saw a blue truck, which had the keys in the ignition and the two passenger doors open with the windows down, parked in the parking lot. Scott closed the truck's windows and doors, locked the truck, left a note on the truck indicating that "Maintenance has keys," and dropped the keys at the apartment's office. *Id.* at 114.

A police evidence technician arrived at the Shadeland Court Apartments later that morning and processed Flowers' truck for evidence. The technician was able to obtain a latent print from the truck's rear passenger window, and that print was later identified as matching Mays'[] right index finger.

Flowers remained in the hospital for one week for treatment of his "potentially life threatening" injuries. *Id.* at 174. A police detective visited Flowers a few days after the shooting, and Flowers told the detective that Mays shot him and "immediately" identified Mays in a photo array. *Id.* at 278.

On October 27, 2005, the State charged Mays with Count I, aggravated battery, a Class B felony; Count II, unlawful possession of a firearm by a serious violent felon, a Class B felony; Count III, battery as a Class C felony; and Count IV, carrying a handgun without a license enhanced to a Class C felony. The trial court set the omnibus date for December 23, 2005.

On December 27, 2005, Mays belatedly filed a Notice of Alibi Defense, which alleged that he was at his girlfriend's house on the night of the alleged crimes. The trial court held a hearing and permitted Mays to belatedly file his alibi notice. The trial court vacated the January 9, 2006, trial date and set a pre-trial conference for February 14, 2006.

On February 13, 2006, the State filed a motion to amend the charging information to add a count of attempted murder. In its motion, the State acknowledged that the motion was being filed after the omnibus date but asserted that the amendment did not prejudice Mays' substantial rights because it would not affect his anticipated alibi defense. According to the State's motion, it originally discussed its intention to add an attempted murder count with Mays' attorney on the day that Mays filed his alibi notice, but it agreed to delay its filing of the amended charge pending plea negotiations with Mays under the original charges, and Mays agreed that "although these negotiations started after the omnibus date, this time during these negotiations would not count against the State." Appellant's App. p. 48. In its motion to amend, the State also noted that it contacted Mays' attorney prior to filing its motion to amend "to determine whether he objects to th[e] motion" and that Mays' counsel did "object to the amended count." *Id.* The following day, the trial court held the pre-trial hearing and granted the State's motion to amend the charging information to add Count V, attempted murder, a Class A felony. The record [on appeal] does not indicate that Mays objected to the amendment during the pre-trial conference or requested a continuance.

*Mays v. State*, No. 49A05-0609-CR-482, 2007 WL 2429254, at *1-2 (Ind. Ct. App. Aug. 29, 2007) (footnotes omitted; some alterations in original), *trans. denied* ("*Mays I*"). Following his April 2006 trial, the jury found Mays guilty of several offenses, and the trial court entered judgment of conviction against Mays for attempted murder, a Class A felony, and for unlawful possession of a firearm by a serious violent felon, a Class B felony.

[3] Mays appealed his convictions. On direct appeal, he argued, in relevant part, that the trial court erred under Indiana Code Section 35-34-1-5(b) (2005), which

prohibited the State from amending the charging information later than thirty days prior to the omnibus date in felony cases. In support of that argument, Mays relied on our Supreme Court's January 2007 decision in *Fajardo v. State*, in which our Supreme Court had held that errors under that statute, when they related to amendments "of substance," were reversible errors without regard to actual prejudice suffered by the defendant. 859 N.E.2d 1201, 1207-08 (Ind. 2007).

[4] However, we did not reach the merits of Mays' *Fajardo* claim. Instead, we held that Mays' trial counsel had failed to preserve that issue for our review because "the record before us," namely, the CCS, "d[id] not indicate that Mays objected to the amendment during the [February 14, 2006,] pre-trial conference on the motion [to amend]" or that he had "requested a continuance" at that conference. *Mays I*, 2007 WL 2429254, at *7 (citing *Absher v. State*, 866 N.E.2d 350, 356 (Ind. Ct. App. 2007)). We noted that the record on appeal "d[id] not include a transcript of the February 14, 2006, pre-trial [conference]." *Id.* at *2 n.8. We also noted that Mays had made "no . . . allegation of fundamental error" on appeal. *Id.* at *7 n.11. Accordingly, we rejected Mays' argument and affirmed his convictions.

[5] In May of 2015, Mays filed his petition for post-conviction relief, which he later amended. In his amended petition, Mays asserted only that his appellate counsel had rendered ineffective assistance "for failing to adequately present Mays' *Fajardo* claim on appeal, which resulted in the claim being waived." Appellant's App. Vol. 2 at 27. At an ensuing evidentiary hearing on Mays'

petition, the post-conviction court admitted into the record the transcript of the February 14, 2006, pretrial conference. That six-page transcript unambiguously demonstrated that Mays' trial counsel had objected, vehemently, to the State's proffered amendment to the charging information. Ex. Vol. at 85-87.[2]

[6]    Mays also called his appellate counsel as his only witness at the evidentiary hearing. His appellate counsel testified as follows:

> Q. . . . [A]s part of your . . . appellate representation, would you review the transcript?
>
> A. Yes.
>
> * * *
>
> Q. And you testified that somebody else [at the Marion County Public Defender Agency] prepared the Notice of Appeal. . . . Did that person always request that every hearing that was handled in the case be transcribed?
>
> A. No. That was never the practice.
>
> Q. What was the usual practice?
>
> A. The usual practice was to request trial, sentencing, and any hearings on motions. And also, after reviewing the CCS, and consulting with trial counsel, any additional hearings that were deemed important.

---

[2] Our pagination of the Exhibits Volume is based on the .pdf pagination.

* * *

Q. If you recall, why did you not request to have the pretrial hearing that was referenced in the Court of Appeals opinion transcribed . . . ?

A. I don't recall specifically. I believe I felt the issue had been adequately preserved such that I could raise it.

Q. Knowing what the Court of Appeals did with the claim, would you have done anything differently in this case?

A. Yes. Absolutely. I would have made an effort to retrieve the recording or the transcript of that hearing.

Tr. at 4-6, 9.

[7] On August 7, 2018, the post-conviction court entered findings of fact and conclusions of law in which the court denied Mays' petition for post-conviction relief. In relevant part, the court found and concluded as follows:

11. [In overruling Mays' objection and permitting the State to amend the charging information after the omnibus date, t]he trial court found that the standard to be applied was whether [Mays'] substantial rights were prejudiced by the late amendment.

12. Because the defense filed an alibi defense, the trial court found that Mays' substantial rights were not prejudiced by the late amendment since the change would not impact Mays' defense. The trial court also opined that it would be a more difficult burden to prove the attempted murder count. The trial court granted the State's motion to amend over objection.

13. No trial date was pending at the time of the pre-trial conference. [Trial counsel] advised the trial court that discovery was ongoing and, again, noted that certain depositions [were pending].

14. The parties [then] agreed to a jury trial date of April 24, 2006 . . . .

* * *

46. Had the record of the February 14, 2006[,] pre-trial conference been included in the appellate record, it would have established that [trial counsel] did in fact object to the amendment and preserved his objection for appeal.

47. However, the record from the pre-trial conference along with other evidence shows that the amendment was one of form, not substance[, under *Fajardo*]. Here, [trial counsel] filed a pre-trial notice of alibi and pursued an alibi defense at trial. As the alibi defense would have been equally available to [Mays] after the amended charge was added, and as [Mays'] evidence would have applied equally to the information in either form, the amendment was one of form and not substance and, thus, permissible.

* * *

49. . . . [T]he Court concludes that [Mays] has not demonstrated a reasonable probability that, but for counsel's errors, the result of the direct appeal would have been different.

Appellant's App. Vol. 2 at 76, 82 (citations omitted). This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[8]     Mays appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017) (alteration original to *Humphrey*).

## *Ineffective Assistance of Appellate Counsel Claims*

[9]     Mays specifically asserts that the post-conviction court erred when it concluded that he had not received ineffective assistance from his appellate counsel. In general:

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

*Id.* at 682. "The standard for gauging appellate counsel's performance is the same as that for trial counsel." *Weisheit v. State*, 109 N.E.3d 978, 992 (Ind. 2018). "Claims of inadequate presentation of certain issues . . . are the most difficult for convicts to advance and reviewing tribunals to support." *Id.* (quotation marks omitted).

### *Deficient Performance*

[10] Our first inquiry is whether Mays' appellate counsel performed deficiently by providing "representation that fell below an objective standard of reasonableness." *Humphrey*, 73 N.E.3d at 682 (quoting *McCary*, 761 N.E.2d at 392). Although the post-conviction court did not explicitly address this issue, we have no qualms in holding that Mays met his burden under this prong of the *Strickland* analysis.

[11]     Mays' appellate counsel attempted to challenge the State's amendment of the charging information after the omnibus date. It was well-settled law at the time of Mays' direct appeal that such issues could not be raised for the first time on appeal; rather, to preserve the issue for appellate review, trial counsel, at a minimum, needed to object in the trial court to the State's proposed amendment. *E.g.*, *Haak v. State*, 695 N.E.2d 944, 951 n.5 (Ind. 1998). Accordingly, to show that Mays was entitled to appellate review of this issue, Mays' appellate counsel had an affirmative duty to include in the record on appeal those portions of the trial court proceedings that demonstrated his trial counsel's preservation of the issue. *See* Ind. Appellate Rule 9(F)(5); *Wilson v. State*, 94 N.E.3d 312, 321 (Ind. Ct. App 2018). She failed to do so, and, because of that error, we resolved this issue on the basis of Mays' apparent failure to preserve it. *Mays I*, 2007 WL 2429254, at *7.

[12]     The failure of Mays' appellate counsel to provide us with an adequate record to permit meaningful review was objectively unreasonable.[3] *Cf. Wilhoite v. State*, 7 N.E.3d 350, 354-55 (Ind. Ct. App. 2014) (holding that the appellant had failed to meet his burden to provide us "with an adequate record to permit meaningful review"). Moreover, although she testified to the post-conviction court that it was the "usual practice" of the Marion County Public Defender Agency to not request transcripts of pretrial hearings, Tr. at 4-6, such practice did not relieve Mays' appellate counsel of her duty to request a particular pretrial transcript

---

[3] We need not consider Mays' alternative argument that his appellate counsel had performed deficiently when she did not raise the *Fajardo* issue as an allegation of fundamental error.

when the issues raised on appeal required that transcript. *See Wilson*, 94 N.E.3d at 321. We hold that Mays has satisfied the first prong under *Strickland*.

### *Prejudice*

[13] We next turn to *Strickland*'s second prong: whether Mays has shown a reasonable probability that the result of his direct appeal would have been different but for his appellate counsel's deficient performance. In other words, we must consider whether, had we reached the merits of Mays' issue in his direct appeal, we would have been likely to reverse Mays' conviction for attempted murder under *Fajardo*. Mays cannot meet his burden to show that such an outcome would have been reasonably probable.

[14] As an initial matter, the transcript of the February 14, 2006, pretrial conference shows that May's trial counsel did not request a continuance after the trial court had overruled his objection to the State's amendment to the charging information. As such, the State argues that, had that transcript been included in the original record on appeal, the outcome of Mays' direct appeal would have been exactly the same as it was, namely, a failure to preserve the issue for our review. It is true that there was ample case law at the time of Mays' direct appeal that stated that, when an objection to the State's amendment to a charging information is overruled, the defendant must then seek a continuance to preserve appellate review of the amendment. *E.g.*, *Haak*, 695 N.E.2d at 951 n.5. The purpose of requesting such a continuance is to give the defendant the opportunity to prepare a defense to the new charges. *See id.*

[15] However, the transcript of the February 14, 2006, pretrial conference, which, again, our Court did not have before it in Mays' direct appeal, makes clear that no trial date had yet been set when Mays' trial counsel objected to the State's proposed amendment and the trial court overruled that objection. Indeed, it was not until after the issue of the State's amendment had been resolved by the trial court that a trial date was then set by agreement of the parties. It would have been an empty gesture for Mays' trial counsel to request the continuance of a trial date that did not exist at the time the trial court overruled his objection. Preservation of issues for appellate review might require futile gestures, but it does not require empty ones. Had the record been properly presented to us on direct appeal, we would not have resolved Mays' *Fajardo* issue on the basis of waiver for failing to request a continuance. *See, e.g.*, *id.* (reaching the merits of the defendant's challenge to the amendment where "it is unclear whether he asked for a continuance").

[16] We thus turn to the merits of Mays' *Fajardo* claim. In *Fajardo*, our Supreme Court, discussing when the State may amend a charging information under the version of Indiana Code Section 35-34-1-5(b) in effect at the time, delineated between amendments of form and amendments of substance:

> an amendment is one of form, not substance, if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an amendment is one of substance only if it is essential to making a valid charge of the crime.

859 N.E.2d at 1207. Our Supreme Court held that amendments of substance may not be made after thirty days prior to the omnibus date pursuant to Indiana Code Section 35-34-1-5(b). *Id.* at 1208. And the Court held that, on the facts before it, "charging a new separate offense constituted an amendment to matters of substance" in part because "charg[ing] the commission of a separate crime . . . is unquestionably essential to making a valid charge of the crime." *Id.*

[17] We have previously explained the holding of *Fajardo* and the law that both preceded and followed that opinion as follows:

> For over twenty years prior to *Fajardo*, case law regularly permitted [charging information] amendments related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were untimely [relative to the omnibus date] under I.C. § 35-34-1-5(b). *See Fajardo v. State*, 859 N.E.2d 1201 (listing numerous Supreme Court and Court of Appeals cases). On January 16, 2007, our Supreme Court changed course and held that the statute clearly required amendments of substance to be made not less than thirty days before the omnibus date, even if a defendant's substantial rights are not prejudiced by the amendment. The legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (i.e., amendments of substance permitted anytime before trial so long as the defendant's substantial rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicates urgency in the legislature's desire to negate the effects of *Fajardo*.

*Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008), *trans. denied*.

[18] Here, the post-conviction court found that, had our Court reached the merits of Mays' *Fajardo* claim on direct appeal, we would have held that the State's amendment was one of form and not one of substance under *Fajardo*. The post-conviction court's finding is clearly erroneous. The State here sought to add an entirely new charge to the charging information by way of an untimely amendment. As it was in *Fajardo*, such an amendment is patently one of substance as "charg[ing] the commission of a separate crime . . . is unquestionably essential to making a valid charge of the crime." 859 N.E.2d at 1208.

[19] Nonetheless, we would not have reversed Mays' convictions in *Mays I* because *Fajardo* was no longer good law. Instead of applying *Fajardo*, we would have held that our legislature's quick amendment to Indiana Code Section 35-34-1-5(b) superseded and negated *Fajardo*'s holding. *See Hurst*, 890 N.E.2d at 95. Although the retroactivity of the amended statute initially resulted in differing opinions from our Court,[4] we agree with the ensuing summary of this issue as stated by another panel of this Court in *Gomez v. State*:

> In *Ramon [v. State*, 888 N.E.2d 244, 252 (Ind. Ct. App. 2008)], this court held that the application of the revised Indiana Code

---

[4] For example, in *Fields v. State*, 888 N.E.2d 304, 309-10 (Ind. Ct. App. 2008), *State v. O'Grady*, 876 N.E.2d 763, 765 n.1 (Ind. Ct. App. 2007), and *Roush v. State*, 875 N.E.2d 801, 806 n.2 (Ind. Ct. App. 2007), we held that the version of the statute in effect at the time the defendant committed his offenses controlled. In *Fuller v. State*, 875 N.E.2d 326, 330 n.2 (Ind. Ct. App. 2007), *trans. denied*, and *Laney v. State*, 868 N.E.2d 561, 565 n.1 (Ind. Ct. App. 2007), *trans. denied*, we held that the version of the statute in effect at the time of the defendant's trial controlled. However, the initial lack of clarity regarding the retroactivity of the amended statute does not establish *Strickland* prejudice; Mays is not entitled to "a windfall as a result of the application of an incorrect legal principle" at the time of his direct appeal. *Lafler v. Cooper*, 566 U.S. 156, 167 (2012).

section 35-34-1-5 did not violate the *ex post facto* provisions of the Indiana and United States Constitutions because the statutory amendment was procedural. In reaching this determination, we concluded that the revised statute defined the procedures the State must follow in order to amend a charging information and that the revision did not create any new crimes, change the elements of any crime, or alter any sentencing statutes. *Id.* In *Hurst*[, 890 N.E.2d at 95], this court found that strong and compelling reasons existed favoring retroactive application of the revised version of Indiana Code section 35-34-1-5. We reasoned that prior to *Fajardo*, case law regularly permitted amendments to an indictment or charging information related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were timely under Indiana Code section 35-34-1-5(b). *Hurst*, 890 N.E.2d at 95. Further, within a few months after our Supreme Court decided *Fajardo*, the legislature quickly amended the statute to reflect the law before *Fajardo*, and this court concluded that this prompt return to pre-*Fajardo* law indicated an urgency to negate the effects of that case. *Id.* Based upon this, we concluded that it was the clear intent of the legislature to have the amended statute apply retroactively. *Id.*

Therefore, based on the holdings of both *Hurst* and *Ramon*, this court has found that the legislative revisions to Indiana Code section 35-34-1-5 were procedural and did not implicate the *ex post facto* provisions of the Indiana and United States Constitutions. The amended version of the statute may accordingly be applied retroactively, and was applicable in the present case, allowing the State to amend its charging information to add the count of murder approximately ten months before the trial.

907 N.E.2d 607, 610-11 (Ind. Ct. App. 2009), *trans. denied*; *see Brown v. State*,

912 N.E.2d 881, 887-90 (Ind. Ct. App. 2009), *trans. denied*; *see also Barnett v.*

*State*, 83 N.E.3d 93, 100-01 (Ind. Ct. App. 2017), *trans. denied*. Further, despite Mays' assertion to the contrary, our holdings in *Ramon*, *Hurst*, *Gomez*, *Brown* and other cases that the amended statute applied retroactively have not been limited to the dates of the defendants' trials. Rather, our holdings have been unlimited in their retroactive reach based on our legislature's "clear intent" to "negate" *Fajardo*. *Gomez*, 907 N.E.2d 610-11; *Hurst*, 890 N.E.2d at 95.

[20] The trial court in Mays' case, relying on the pre-*Fajardo* case law available to it at the time, analyzed the permissibility of the State's proposed amendment to the charging information based on whether that proposed amendment would prejudice the substantial rights of the defendant. *See Hurst*, 890 N.E.2d at 95. That same test was nearly immediately reinstated to Indiana Code Section 35-34-1-5(b) by our legislature's post-*Fajardo* statutory amendment. *Id.* And we decided Mays' direct appeal more than three months after the effective date of that statutory amendment. *See Mays I*, 2007 WL 2429254, at *7 n.9. Thus, had we reached the merits of Mays' *Fajardo* claim in his direct appeal, the correct resolution would have been to apply the amended statute, not *Fajardo*, which in turn would have required this Court to consider, as the trial court did here, whether the State's untimely amendment to the charging information prejudiced Mays' substantial rights. *E.g.*, *Gomez*, 907 N.E.2d at 611.

[21] And we would have held that the amendment to the charging information did not prejudice Mays' substantial rights. "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the

positions of either of the parties, it does not violate these rights." *Id.* (quoting *Ramon*, 888 N.E.2d at 252). "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Id.* (quoting *Ramon*, 888 N.E.2d at 252).

It is not disputed that Mays had notice of the State's anticipated amendment to the charging information long before the State formally requested the amendment. *Mays I*, 2007 WL 2429254, at *7. It is also not disputed that Mays' ensuing trial date following the State's amendment was set with his agreement. And it is not disputed that Mays' alibi defense to the State's charges remained the same before and after the amendment. In short, nothing about the State's amendment prejudiced Mays' substantial rights. Thus, had we reached this issue in *Mays I*, we would have affirmed. Accordingly, we agree with the post-conviction court that Mays cannot show that he was prejudiced by his appellate counsel's deficient performance.

### *Recent Federal Case Law*

Mays has submitted, post-briefing, a notice of two additional authorities, namely, a recent opinion from the United States Court of Appeals for the Seventh Circuit in *Jones v. Zatecky*, ___ F.3d ___, No. 17-2606, 2019 WL 966601 (7th Cir. Feb. 28, 2019), and that court's prior opinion in *Shaw v. Wilson*, 721 F.3d 908, 911 (7th Cir. 2013). In *Shaw*, the defendant's appellate attorney eschewed challenging on appeal whether the trial court had erred in permitting the State to amend the charging information and, instead, raised only an issue of sufficiency of the evidence to support the convictions. On habeas review, the

Seventh Circuit held that the issue relating to the amendment of the charging information was clearly stronger than the sufficiency issue. *Shaw*, 721 F.3d at 915-18. The Seventh Circuit further held that counsel's deficient performance entitled the defendant to a new direct appeal. *Id.* at 919-20. In reaching those holdings, the Seventh Circuit expressly declined to consider whether the amended version of Indiana Code Section 35-34-1-5(b) applied retroactively as "the Indiana appellate courts [would] be free to consider" such issues in the defendant's new direct appeal. *Id.* at 919.

[24] Nevertheless, in determining that the issue relating to the charging information was clearly stronger than the sufficiency issue, in *Shaw* the Seventh Circuit declared that the Indiana Supreme Court's 1998 opinion in *Haak* established "the same rule" announced in *Fajardo*. *Id.* at 917. However, when the State argued that "the Indiana Supreme Court's reading of Section 35-34-1-5 in *Fajardo* sharply diverged from that court's prior understanding of the statute in *Haak* and thus was a radical change in law," which argument is consistent with our Court's precedent, *see Hurst*, 890 N.E.2d at 95; *Townsend v. State*, 753 N.E.2d 88, 94 (Ind. Ct. App. 2001), the Seventh Circuit responded that "that line of argument implicitly draws us into the content of state law, and we have emphasized that this is forbidden territory," *Shaw*, 721 F.3d at 916. Thus, the Seventh Circuit's ultimate conclusion here was merely that the defendant's appellate counsel had a better argument on direct appeal in challenging the State's untimely amendment to the charging information than in presenting only an "undeniably frivolous" sufficiency issue. *Id.* at 917.

[25] In *Jones*, the defendant's arrest and prosecution occurred after *Haak* but before *Fajardo*. When the State sought an untimely amendment to the charging information, the defendant's trial counsel failed to object. On direct appeal, which was decided by our Court more than six months after the effective date of the statutory amendment to Indiana Code Section 35-34-1-5(b), we held that trial counsel's failure to object precluded appellate review. *See Jones*, 2019 WL 966601, at *2. On habeas review, the Seventh Circuit held that, had the defendant's trial counsel objected based on *Haak*, the defendant would have been entitled to the same relief that the Indiana Supreme Court granted the defendant in *Fajardo*. *Id.* at *2 & n.2. However, in reaching that decision, the Seventh Circuit stated that our legislature's post-*Fajardo* statutory amendment was "not retroactive and thus has no effect on [the defendant's] case." *Id.* at *1 n.1.

[26] We do not find *Shaw* or *Jones* persuasive. First, we note that Mays' post-conviction attorney has framed the issues in this appeal around *Fajardo*, not *Haak*, which, again, is consistent with our Court's precedent. *See Hurst*, 890 N.E.2d at 95; *Townsend*, 753 N.E.2d at 94. Second, the deficient performance in Mays' direct appeal resulted from a failure to adequately present the issue for our review, not from a failure to raise a clearly stronger argument. Thus, *Shaw* and its reasoning are inapposite to the instant appeal. Third, *Shaw* expressly did not reach the issue of the retroactive effect of the statutory amendment, and while *Jones* declared that the statutory amendment was not retroactive, as explained above that declaration is not consistent with our Court's precedent.

*See Brown*, 912 N.E.2d at 887-90; *Gomez*, 907 N.E.2d at 610-11; *Hurst*, 890 N.E.2d at 95; *Ramon*, 888 N.E.2d at 252. Thus, notwithstanding the federal authorities cited by Mays, we hold that the statutory amendment would have applied to Mays on direct appeal, and, as such, we affirm the post-conviction court's denial of Mays' petition for post-conviction relief.

## *Conclusion*

In sum, had Mays' appellate counsel properly presented the issue of the State's untimely amendment to the charging information on direct appeal, we would have held that the statutory amendment applied and, therefore, that the trial court did not commit reversible error in permitting the amendment. Accordingly, Mays cannot show that he was prejudiced by his appellate counsel's deficient performance, and we affirm the post-conviction court's denial of Mays' petition for post-conviction relief.

Affirmed.

Pyle, J., and Altice, J., concur.