

**FILED**

Dec 11 2023, 8:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Owens,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 11, 2023

Court of Appeals Case No.
23A-CR-985

Appeal from the
Marion Superior Court

The Honorable
Shatrese Flowers, Judge

The Honorable
James Snyder, Magistrate

Trial Court Cause No.
49D28-2301-F5-1626

**Opinion by Judge Vaidik**
Judges Bradford and Brown concur.

**Vaidik, Judge.**

# Case Summary

[1] Indiana Trial Rule 34 governs requests for production of documents and electronically stored information during discovery and responses to such requests. For a party to invoke Rule 34 as the basis for an alleged discovery violation, that party must have first made a discovery request. In a criminal case, if the defendant made no discovery request to the State, the defendant cannot later challenge the admission of documents or electronically stored information on the ground that the State violated Rule 34 in its production of the materials.

[2] Here, Thomas Owens was convicted of Level 5 felony battery by means of a deadly weapon after getting in a fight that was captured on a CVS surveillance camera. CVS provided the State with a disk containing the surveillance footage and a media-player application. During discovery, the State provided Owens with the footage but not the media player, which affected the speed at which Owens could view the footage. Owens argues this was a violation of Rule 34. But because Owens never made a request for production, he can't invoke Rule 34 on appeal as the basis for his challenge to the State's production of the footage. Owens raises several other issues, including whether the trial court properly instructed the jury, whether the State presented sufficient evidence of the victim's identity and the use of a deadly weapon, and whether the trial court

erred in denying his motion to supplement the record. We find these arguments without merit and affirm his conviction.

## Facts and Procedural History

[3] The evidence most favorable to the conviction is as follows. One night in January 2023, Owens's wife was with Jacob Dugas in Dugas's SUV at a CVS Pharmacy in Indianapolis. Owens went to the CVS and fought with Dugas in the parking lot. Surveillance footage provided to police by CVS showed that Owens ran from his car to the driver's side of Dugas's SUV holding a long, stick-like object. Dugas and Owens's wife got out of the SUV, and after an interaction between Owens and Dugas behind the SUV, Owens and his wife walked away. As they were heading to Owens's car, Dugas stepped in front of Owens, blocking his path. Owens swung the stick-like object at Dugas and struck him with it. Owens and his wife got into his car and left.

[4] Dugas called 911, and Indianapolis Metropolitan Police Department (IMPD) Detective Eric Parrish and Officer Jack Tindall, an evidence technician, responded to CVS. Officer Tindall took photos of Dugas, which showed a bleeding cut on his head and blood on his ear, neck, and cheek. Detective Parrish spoke with Dugas and others at the scene and determined Owens was a suspect.

[5] Later that night, Detective Parrish and IMPD Captain Christopher Boomershine found Owens at a gas station. When they asked Owens about the

incident at CVS, he stated that Dugas attacked him with a stun gun, he never hit or touched Dugas, and Dugas was known to injure himself and blame it on other people. Captain Boomershine recorded the conversation on his body-worn camera.

[6] The State charged Owens with Level 5 felony battery by means of a deadly weapon, alleging he "did knowingly touch Jacob Dugas in a rude, insolent, or angry manner; said touching being committed with a deadly weapon, that is, a baseball bat[.]"[1] Appellant's App. Vol. II p. 27. Owens's counsel subpoenaed Dugas for a deposition on three dates, but Dugas failed to appear at any of the depositions. As a result, the trial court excluded Dugas as a witness and ordered the exclusion of "any and all testimony and/or other evidence referring or related to Jacob Dugas." *Id.* at 95. This included Dugas's 911 call.

[7] CVS provided police with a disk of the surveillance footage, which included the Click It Media Player application and a long list of application extensions. The disk also contained a file folder with the same footage broken into thirteen separate "M4V" video files. The State produced these thirteen M4V files to the defense "via eDiscovery[.]" *Id.* at 69. The State didn't produce the Click It

---

[1] The State initially charged Owens with Level 5 felony intimidation as well, but the trial court later dismissed this charge upon motion by the State due to evidentiary problems.

Media Player application or the associated files. Owens didn't follow up with any discovery requests about the surveillance footage.[2]

[8] A jury trial was held in March 2023. The trial court's preliminary instruction on the elements of the charge used the exact language from the charging information. Before the court read the preliminary instructions to the jury, the State moved to strike "baseball bat" from the elements instruction so that it just said, "committed with a deadly weapon" because the State was unsure if it could introduce evidence of a baseball bat without the 911 call from Dugas. Tr. p. 101. The court denied the motion but noted that the parties could revisit the request for final instructions.

[9] The State offered into evidence the disk from CVS with the surveillance footage of the fight, which the trial court admitted as State's Exhibit 1. The State moved to publish three specific video files from the disk to the jury, which the court categorized as State's 1A, 1B, and 1C.[3] When the State started playing 1A using Click It Media Player, defense counsel objected, and the following sidebar was held:

---

[2] The State asserts that Owens "did not make any discovery request," Appellee's Br. p. 30, which Owens does not dispute.

[3] State's 1A is the file named "20230114_0012_0058_103.m4v." 1B is the file named "20230114_0012_0059_104.m4v." 1C is the file named "20230114_0012_0100_105.m4v." These were the only clips of the surveillance footage shown to the jury.

[DEFENSE COUNSEL]: This video is altered from what was discovered to us. The video we received was not slowed down to this degree. It's not an original, what was disclosed to us.

\*     \*     \*     \*

THE COURT: How am I supposed to know that? Do you have the original?

[DEFENSE COUNSEL]: Yes. I can play it for the Court if you'd like. But this is substantially slowed down. The original copy that we have is sped up.

THE COURT: . . . [H]ow do you slow this down?

[THE STATE]: I don't know. This was original disc [sic] that we received and then we uploaded it into discovery and then sent it.

THE COURT: Okay. Okay. Well, at this point, State's Exhibit 1 has been admitted.

[DEFENSE COUNSEL]: Judge, it's my understanding the video that was discovered was -- did not have another player with it . . . . You had to use Windows Media Player.

\*     \*     \*     \*

[DEFENSE COUNSEL]: And it's playing at about one quarter of the speed that we were prepared for trial on, and so that's the problem that we have.

*Id.* at 119. The court overruled the objection, and the State played the rest of 1A for the jury. Defense counsel renewed his objection to State's 1B and 1C, which the court overruled, and the State also played 1B and 1C using Click It Media Player. The CVS employee who provided the surveillance footage to police testified that Click It was the specific media player used by CVS.

[10] The State also presented the photos of Dugas from the crime scene (without identifying him by name), which the court admitted as State's Exhibits 2-8 with no objection by the defense. Officer Tindall confirmed the exhibits were the photos he took of the alleged victim's injury. He testified that the cut was consistent with an object striking a person and that a blunt object could cause a similar injury. Detective Parrish testified that the person in the photos was the person he saw when he responded to CVS.

[11] The court also admitted the recording of Owens's conversation with Detective Parrish and Captain Boomershine as State's Exhibit 9, with no objection by the defense. In the video, when Captain Boomershine asked Owens if he battered "him" with a baseball bat, Owens said he never had a baseball bat. Ex. 9 at 1:51. Captain Boomershine then asked Owens what he hit "him" with, and Owens said he "never hit Jacob." *Id.* at 1:58.

[12] After the State rested, Owens moved for judgment on the evidence pursuant to Indiana Trial Rule 50(A), which the court denied. During review of the final jury instructions, the State again asked the court to omit "baseball bat" from the elements instruction, arguing that "the evidence has shown that there could

have been a deadly weapon used, but that could have been anything, not just a baseball bat, and therefore, it should be removed." *Id.* at 164-65. Defense counsel responded, in part, as follows:

> [DEFENSE COUNSEL]: Judge, the charging instrument is a pretty important thing, the information. And so we believe that it should remain in there . . . . And Judge, we prepared a defense today based on the allegation that this is a baseball bat . . . .
>
> THE COURT: You did? I thought it was self-defense?
>
> [DEFENSE COUNSEL]: Well, that's part of it.
>
> THE COURT: Okay. [S]o your preparation involved arguing that it was something other than a baseball bat?
>
> [DEFENSE COUNSEL]: . . . [T]he Defense believes that if the State cannot prove that it is a baseball bat, it speaks to the nature of the investigation and the quality of the investigation.
>
> *          *          *          *
>
> [DEFENSE COUNSEL]: I think my concern too is . . . [t]he allegations are that he hit him with a baseball bat . . . so I believe that the State has to prove that in order for them to find him guilty.

*Id.* at 165-66. The court ultimately struck "baseball bat" from the instruction, which subsequently read "and the offense was committed with a deadly weapon against Jacob Dugas." *Id.* at 167, 186; Appellant's App. Vol. II p. 133.

Defense counsel noted for the record that "the appropriate remedy in this case for the State would have been to move to amend the information." Tr. p. 167.

[13] After jury instructions were finalized, the defense rested without presenting any evidence. Defense counsel's closing argument centered on Owens's claim of self-defense. During final instructions, along with the revised elements instruction, the court instructed the jury on the definitions of "deadly weapon" and "serious bodily injury." *Id.* at 187-88; Appellant's App. Vol. II pp. 136-37. The jury found Owens guilty as charged.

[14] Owens later moved the court to supplement the trial record with Defendant's Exhibit A, three video files from the CVS surveillance footage the State produced during discovery, pursuant to Indiana Appellate Rule 32. Owens claimed Exhibit A "must be made a part of the record in this case for purposes of appellate review of the merits of Counsel's objection" because "[t]he current record does not fully and accurately reflect the circumstances surrounding the admission of State's Exhibit 1A, 1B, 1C over Defense objection[.]" Appellant's App. Vol. II p. 169. At the hearing on the motion, defense counsel noted that he was not alleging any misconduct by the State and did not believe the State knew about the discrepancy in the video speed ahead of time. The trial court said it was denying Owens's motion because Rule 32 did not apply but would admit Defendant's Exhibit A for purposes of appellate review.

[15] Owens now appeals.

# Discussion and Decision

## I. The trial court did not err in admitting the surveillance footage

[16] Owens argues the trial court erred in admitting State's Exhibit 1, the CVS surveillance footage. He claims the court should have excluded the exhibit because the State violated Indiana Trial Rule 34 by producing the M4V video files but not the Click It Media Player application during discovery. Trial courts have broad discretion in reviewing a challenge to discovery matters, and we will affirm a court's determination as to a discovery violation absent clear error and resulting prejudice. *Fleming v. State*, 833 N.E.2d 84, 91 (Ind. Ct. App. 2005).

[17] In criminal cases, much discovery is provided automatically by the State without a request from the defendant. Under the Marion County local criminal rule governing discovery, "[n]o written motion is required" by the defendant because the court "automatically order[s] the State to disclose and furnish all relevant items and information[.]" Marion LR49-CR00-107. Pursuant to this rule, the State provided Owens with a variety of materials, including video files from CVS. Appellant's App. Vol. II p. 69. Owens doesn't claim the State violated the local rule by producing only some of the files.

[18] Instead, Owens argues the State violated Trial Rule 34. Indiana's Rules of Trial Procedure apply to criminal proceedings as long as there is no conflicting criminal rule. Ind. Crim. Rule 21; *Minges v. State*, 192 N.E.3d 893, 897 (Ind. 2022). The trial rules that govern discovery, including Rule 34, are designed to

facilitate "'liberal discovery' in order to provide the maximum amount of information possible to both parties[.]" *Minges*, 192 N.E.3d at 897. To this effect, Rule 34 enables parties to seek discovery directly from each other by serving requests for production of documents and electronically stored information. *Id.* If one party requests electronically stored information from the other but does not specify the form of production, under Rule 34(B), the "responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable."

[19] In a criminal proceeding, the defendant can use Rule 34 to request additional documents or electronically stored information that the State didn't already produce. This is where the problem lies for Owens. He never made a request for production, but he nonetheless claims the State violated Rule 34, arguing that it did not produce the surveillance footage in a form in which it is ordinarily maintained or a reasonably usable form.[4] But the State was not bound by Rule 34 because it is not a "responding party" within the meaning of the rule. The rule presupposes that a request for production has been made, and since Owens never made such a request, he cannot claim a violation of the rule.

[20] Even if the State had been responding to a Rule 34 request for production, there would be no violation because the State produced the footage in a reasonably usable form. The State provided Owens with the footage in the M4V file type,

---

[4] Notably, Owens did not mention Rule 34 when he objected to State's Exhibit 1 at trial.

which is compatible with a variety of media-player applications. While the Click It Media Player application was also on the disk from CVS, this is merely one application that can be used to play the M4V files. Owens used Windows Media Player, which allows users to adjust the speed as they are watching video files, so Owens could have viewed the footage at the same speed at which the State played it at trial.

[21] We acknowledge that, where the State possesses electronically stored information in multiple files, it would be better practice for the State to provide the defense with all of those files. Here, the State should have just sent Owens all the files on the disk from CVS. But because Owens didn't request discovery from the State, he can't challenge the State's production of the information based on a rule that concerns responses to discovery requests. The trial court did not err in admitting State's Exhibit 1.

## II. The trial court properly instructed the jury on the elements of the charge

[22] Owens also contends the trial court erred by omitting from its final instruction on the elements of the charge the words "baseball bat," which were included in the charging information, as the deadly weapon used to strike Dugas. To begin, Owens argues the proper procedure for the State to eliminate this language would have been to amend the charging information, not ask the trial court to strike it from the elements instruction. We are faced here with an unusual situation in which the charge was effectively amended even though the State never formally moved to amend the information. But because the outcome (the

trial court striking "baseball bat" from the elements instruction) would have been the same even if the State filed a formal motion, for purposes of our review, we will consider the State's request for alteration of the jury instruction as a motion to amend. *See Rodriguez v. State*, 385 N.E.2d 1208, 1211 (Ind. Ct. App. 1979) ("Although the State did not formally move to amend the information . . . , the instructions given by the court and approved by the State created the same effect.").

[23] Amendments of charges are governed by Indiana Code section 35-34-1-5. Subsection (b) provides, in pertinent part, that the charging information may be amended in matters of substance at any time before the commencement of trial if the amendment does not prejudice the substantial rights of the defendant. Under subsection (c), the court may permit an amendment of form any time before, during, or after trial, so long as the amendment does not prejudice the defendant's substantial rights.

[24] In determining whether the trial court properly allowed the State to amend its charging information, we must first determine whether the amendment was one of form or of substance. *Jones v. State*, 863 N.E.2d 333, 337 (Ind. Ct. App. 2007). This is a question of law that we review de novo. *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014), *reh'g denied*. Our Supreme Court has held that an amendment is of form "if a defense under the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form," and "an amendment is of substance only if it is essential to making a valid charge of the crime." *Id.* at 406.

[25] Here, "baseball bat" was not essential to making a valid charge of Level 5 felony battery by means of a deadly weapon; the essential element to enhance battery to a Level 5 felony is the use of a deadly weapon, which remained in the jury instruction. *See, e.g.*, *Jones*, 863 N.E.2d at 338 (concluding amendment was not of substance where the class of the offense, the essential elements of the crime, and the specific statutory provision alleged to have been violated all remained the same). Nor did the amendment cause Owens to lose any defenses—his only defense was self-defense, which was just as available whether or not "baseball bat" was in the charge. The removal of "baseball bat" from the charge was an amendment of form, not of substance.

[26] Because the amendment was of form, the trial court could allow it at any time before, during, or after trial, so long as it did not prejudice Owens's substantial rights. "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge[.]" *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), *trans. denied*. An amendment as to either form or substance does not prejudice these rights if it does not affect any particular defense or change either party's position. *Id.* at 610-11. "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Id.* at 611.

[27] Owens claims "his defense was centered on rebutting the specific object alleged as a deadly weapon under the statute," Appellant's Br. p. 23, but we find no support for this in the record. The court altered the language of the elements instruction before the defense rested, but defense counsel still presented no

evidence and only argued self-defense in closing. Additionally, Owens had notice before the start of trial that the State intended to amend the elements instruction; when the State moved to alter the preliminary instruction, it advised it would renew the motion for final instructions, and the trial court noted the parties could revisit the request then. *See Mays v. State*, 120 N.E.3d 1070, 1081 (Ind. Ct. App. 2019) (finding amendment to information did not prejudice defendant's substantial rights where defendant had notice of the anticipated amendment and his defense remained the same before and after the amendment), *reh'g denied*, *trans. denied*. Because the charge of Level 5 felony battery by means of a deadly weapon did not change, and the amended charge did not affect Owens's defense, he had a reasonable opportunity to prepare for and defend against the charge. His substantial rights were not prejudiced.

[28] Although the State did not follow the statutorily prescribed procedure for amending the charge, because the removal of "baseball bat" from the elements instruction did not prejudice Owens's substantial rights, the trial court did not err in altering the instruction. *See Nash v. State*, 545 N.E.2d 566, 567 (Ind. 1989) ("The purposes of the motion to amend were therefore fulfilled, and the lack of that formal motion to amend did no prejudice to substantial rights. There is therefore no error warranting remedy.").

## III. There was sufficient evidence to support Owens's conviction

[29] Owens next argues there is insufficient evidence to sustain his conviction.[5] When reviewing sufficiency-of-the-evidence claims, we neither reweigh the evidence nor judge witness credibility. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the verdict and any reasonable inferences that can be drawn from it. *Id.* We will affirm a conviction if there is substantial evidence of probative value to support each element of the offense such that a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[30] To obtain a conviction for Level 5 felony battery by means of a deadly weapon, the State had to prove Owens knowingly touched "Jacob Dugas" in a rude, insolent, or angry manner with a deadly weapon. Ind. Code §§ 35-42-2-1(c)(1), (g)(2); Appellant's App. Vol. II pp. 27, 133. Owens argues the State failed to prove both that Dugas was the victim and that Owens used a deadly weapon.

### A. Identity of the Victim

[31] Owens maintains there was insufficient evidence of the identity of the victim named in the charging information because the victim's full name was never established at trial. He contends the State failed to prove that the injured man in

---

[5] Owens makes a separate argument that the trial court erred in denying his motion for judgment on the evidence under Trial Rule 50(A). *See* Appellant's Br. pp. 13-16. Because "[t]he standard of review for a denial of a motion for judgment on the evidence is the same as that for a challenge to the sufficiency of the evidence," *Dye v. State*, 943 N.E.2d 928, 930 (Ind. Ct. App. 2011), we consider these arguments together.

the evidence photos and the "Jacob" that Owens mentions in the body-cam video are "Jacob Dugas," the victim alleged in the information. Appellant's Reply Br. p. 4. Owens claims that "[a]t most, the State's evidence sufficiently proves Owens was in an altercation with a Jacob." *Id.* at 6. We disagree.

[32] While officers questioned Owens about the incident at CVS, Owens referred to the other person involved as "Jacob" multiple times. *See* Ex. 9 at 1:24, 2:02, 2:57, 3:09. Part of the CVS surveillance footage shows a person stepping in front of Owens as Owens is walking to his car. When describing the events in the footage during closing argument, defense counsel stated, "Mr. Dugas blocks Thomas from returning to his vehicle . . . . Jacob blocked his path." Tr. pp. 178-79. The footage also shows Owens hitting the person blocking his path with a long, stick-like object. Officer Tindall was called to CVS to take "photographs of a victim that had been hit." *Id.* at 124. After the trial court admitted the exhibits showing Dugas's injury, Officer Tindall confirmed the exhibits were "the photographs that [he] took that night . . . of the alleged victim." *Id.* at 125. Detective Parrish also testified that the person in the photos was the same person he saw when he arrived at CVS.

[33] Taken together, although Dugas was never identified by his full name at trial, the State's evidence and defense counsel's reference to the victim as "Mr. Dugas" were sufficient for the jury to find that the victim referenced at trial was "Jacob Dugas," as named in the charging information. *See Davis v. State*, 796 N.E.2d 798, 806 (Ind. Ct. App. 2003) (finding although victim's name was not specifically mentioned at trial, evidence was sufficient for trial court to conclude

unnamed victim identified in testimony was the same victim referenced in the charging information), *trans. denied*.

### B. Use of a Deadly Weapon

[34] Owens also contends the State failed to establish that he committed the battery with a deadly weapon. As stated above, the State was not required to prove Owens specifically used a baseball bat, so we consider only whether the State proved whatever object Owens used could be considered a deadly weapon. Whether an object is a deadly weapon is a question of fact determined from the nature of the object, how the defendant actually used the object, and the circumstances of the particular case. *Burgh v. State*, 79 N.E.3d 955, 957 (Ind. Ct. App. 2017).

[35] The statutory definition of "deadly weapon" is broad and fact-sensitive. *Id.* As relevant here, "deadly weapon" is defined as:

> (2) A destructive device, weapon, device, taser . . . or electronic stun weapon . . . , equipment, chemical substance, or other material that in the manner it:
>
> (A) is used;
>
> (B) could ordinarily be used; or
>
> (C) is intended to be used;
>
> is readily capable of causing serious bodily injury.

I.C. § 35-31.5-2-86(a). And "serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." I.C. § 35-31.5-2-292.

[36]     Owens claims that to prove the object he used in the battery was a deadly weapon, the State had to establish what the object was. But there is no requirement in our statutes or case law that the State must prove exactly what object a defendant used to convict for battery by means of a deadly weapon. Instead, in determining whether an object constitutes a deadly weapon, the factfinder looks to its capacity to inflict serious bodily injury under the circumstances. *Timm v. State*, 644 N.E.2d 1235, 1238 (Ind. 1994); *see also Grogg v. State*, 156 N.E.3d 744, 750-51 (Ind. Ct. App. 2020) (finding "flashlight type electrical device" qualified as deadly weapon because it had the ability to cause serious bodily injury, even though State did not establish whether it was a taser or stun gun), *trans. denied*. Put another way, the State must prove whatever object a defendant used to commit battery meets the statutory definition of deadly weapon, not what the object was.

[37]     In the surveillance footage from CVS, Owens can be seen swinging and striking Dugas with a long, stick-like object. The photos taken at the crime scene show a cut on the side of Dugas's head bleeding down onto his neck and ear. *See* Exs. 3-8. Officer Tindall testified that the cut went into Dugas's scalp, the injury was consistent with an object striking a person, and a blunt object could cause a

break in the skin like the one shown in State's Exhibit 5. Although the State did not establish what exactly the long, stick-like object was, based on how Owens used it—swinging it at Dugas and striking him with it—and the extent of Dugas's injury, the jury could have reasonably inferred that the object could inflict serious bodily injury. The evidence is sufficient to establish that Owens battered Dugas using a deadly weapon.

## IV. The trial court did not err in denying Owens's motion to supplement the record under Appellate Rule 32

[38] Finally, Owens argues the trial court erred in denying his motion to supplement the record with Defendant's Exhibit A, the video files he received from the State during discovery. Owens asked the court to make Defendant's Exhibit A part of the trial record under Indiana Appellate Rule 32(A):

> If a disagreement arises as to whether the Clerk's Record or Transcript accurately discloses what occurred in the trial court . . . , any party may move the trial court . . . to resolve the disagreement. The trial court retains jurisdiction to correct or modify the Clerk's Record or Transcript at any time before the reply brief is due to be filed.

[39] Owens claims that because trial courts have jurisdiction under the rule to modify or correct the record, "the court was permitted to supplement the record, and Owens's request to do so was procedurally proper." Appellant's Br. p. 34. But Rule 32 does not apply here. There is no disagreement as to whether the record accurately reflects what occurred at trial—both parties acknowledge that while defense counsel said he could play Defendant's Exhibit A for the

court, he never actually presented it. Because the exhibit never came before the court, its absence from the record is accurate, so Rule 32 was not the proper procedure for adding it to the record. *See Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98, 101 (Ind. Ct. App. 1995) ("As the Unfiled Documents were never before the trial court, their exclusion from the Record on appeal is neither an omission nor a misstatement of the record. [The Rule] does not authorize including in the Record evidence that was never before the trial court."), *reh'g denied*, *trans. denied*.

[40] Owens's motion to supplement the record amounted to an untimely offer of proof, and his counsel admitted as much at the hearing on the motion. *See* Tr. p. 230 (asking the trial court to admit Defendant's Exhibit A to correct "the lack of proffer on my part Judge, as to what was disclosed to Defense . . . because I did not introduce the . . . sped-up video"). Failure to make an offer of proof at trial results in waiver of the asserted evidentiary error. *Cole v. State*, 28 N.E.3d 1126, 1135 (Ind. Ct. App. 2015). And in any event, although the trial court denied Owens's motion under Rule 32, it still admitted Defendant's Exhibit A for purposes of appellate review, so the goal of the motion was satisfied. Owens doesn't explain how denial of the motion caused him any harm or what difference it would have made if the court had granted it. The trial court didn't err in denying Owens's motion to supplement the record.

[41] Affirmed.

Bradford, J., and Brown, J., concur.